No. 28,692.

O. H. Alter, as Administratrix of the Estate of I. B. Alter, Deceased, *Appellant,* v. Charles W. Johnson, as Receiver of the Rossville State Bank, *Appellee.*

(273 Pac. 474.)

Opinion filed January 12, 1929.

*Clad Hamilton, Donald A. Campbell* and *Frank Flack,* all of Topeka, for the appellant.

*Randal C. Harvey,* of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The principal purpose of this action was to secure an intrepretation of statutes under which an administratrix of the estate of a deceased person and the receiver of an insolvent bank should take action and for a determination of the duties and rights of these officers in the control and disposition of property.

The Rossville State Bank was a going concern up to August 18, 1927, in which I. B. Alter was a stockholder and officer. He held stock of the bank to the extent of 188 shares. Alter died intestate on August 18, 1927, and on the morning of that day the bank was closed and placed in the hands of the banking department. Two days later Charles W. Johnson was appointed receiver of the bank and is still holding that position. On September 1 Mrs. O. H. Alter was appointed administratrix of the estate of I. B. Alter, deceased. The assets of the bank were found to be insufficient to pay the depositors of the bank, and on September 13, 1927, the receiver made a demand upon the administratrix to pay the double liability upon the 188 shares of stock held by Alter at the time of his death. This was not paid, and on January 17, 1928, suit was brought by the receiver against the administratrix upon the double liability on the Alter stock, and on May 4, 1928, judgment was rendered against the administratrix for $18,800 upon that liability. Before the judgment was rendered this action was brought. The estate of I. B. Alter is insolvent and it is conceded that the total assets, including personal and real property, is much less than the indebtedness of the estate. The administratrix is contending that, under the statutes relating to executors and administrators, it is her duty and she is authorized to sell the property of the estate and pay claims according to the classifications prescribed in the statute, while the receiver is contending that under section R. S. 9-156 he has a preferred and prior claim on the real estate and that the administratrix had no right to sell it and dispose of the proceeds until the claim for double liability is paid. The statute provides:

"At any time after the closing of any incorporated bank, if it shall appear to the receiver thereof that the assets of such bank are insufficient to pay its liabilities, it shall be the duty of such receiver to immediately institute proper proceedings, in the name of the bank, for the collection of the liability of the stockholders of such bank; all sums so collected to become a part of the assets of such bank and to be distributed *pro rata* to the creditors thereof in

the same manner as other funds: *Provided,* That all transfers of property by a stockholder after the closing of any such bank and before the payment of the double liability as provided by this act, shall be absolutely void as against said double liability. No action by any creditor against any stockholder of such bank for the recovery of such liability shall be maintained unless it shall appear to the satisfaction of the court that the receiver has failed to commence action as herein provided."

The trial court found that there was an actual controversy between the parties and that they were entitled to an interpretation of R. S. 9-156. The interpretation placed on the statute as applied to the facts in the case was:

"1. That the defendant by virtue of his office as receiver of the Rossville State Bank, and the judgment above referred to, has a preferred claim upon all of the real property of I. B. Alter, deceased, prior and superior to all demands against the estate of the said decedent, except liens upon real estate existing before his death and claims of the first and second class, and it is the duty of the probate court to allow said claim as prior in right to all of the other classes of claims except such preëxisting liens and taxes as to said real property.

"2. That said plaintiff has no legal right to transfer any property free of said preferred claim and can convey no unencumbered title thereto."

Judgment was rendered in accordance with this finding.

The principal question upon which the parties divide is, Does the liability of a stockholder in an insolvent bank constitute a lien or preferred claim upon property in the estate of a deceased stockholder which must be paid out of the property prior to all claims of creditors not otherwise secured? A negative answer to the question must be given. It is conceded that if a lien or preference is authorized the authority must be found in the language of the statute quoted. (R. S. 9-156.) It is well settled that liens can only be created by agreement or by some fixed rule of law. (*Frost v. Atwood,* 73 Mich. 67.)

We are of the opinion that the legislature in the enactment of the statute did not in terms create a lien or preference, and that there is nothing in the purpose or necessity of its enactment indicating that to have been the intention of the legislature. No ambiguity is found in the act and nothing is seen in the necessities for the act or in the mischief sought to be remedied by it to warrant the court in extending the meaning beyond the plain terms of the act. A primary rule of construction is that the intention of the legislature is to be derived from its language, and when it is not obscure or

uncertain there is no reason for a court to look beyond the words used in search of what the legislature intended to enact when the language employed clearly shows what it did enact. The statute explicitly provides that if a bank is closed and a receiver finds that its assets are insufficient to pay its liabilities he shall institute proceedings to collect the double liability, which when collected shall become part of the assets of the bank and be distributed *pro rata* to the creditors thereof in the same manner as other funds. Then there is a restriction added by a proviso that "all transfers of property by a stockholder after the closing of any such bank and before the payment of the double liability . . . shall be absolutely void as against said double liability." Nothing is contained in the proviso relating to liens, preferences, classifications or order of payment. There is nothing in it purporting to change or amend the laws relating to decedent's estates nor as to the priorities on which demands against such estates shall be paid. No words in the proviso imply that the legislature intended to create a lien or declare a preference among creditors. The words employed go no further than to place a restriction upon a stockholder of a closed bank to prevent him from covering up his property to avoid payment of the double liability. The purpose of the statute and the evil to be remedied are obvious and have been considered in *Glenn v. Callahan*, 125 Kan. 44, 262 Pac. 573, where it was said:

"It is a fact, of which the court may well take judicial notice, that men who become sureties for others or incur liabilities which they do not expect to pay will often resort to every possible means to avoid payment of the liability. Stockholders in banks do not expect to pay the double liability. When they see a possibility of being obliged to pay that liability they frequently dispose of their stock, if they can do so, and thereby escape payment. They will sometimes dispose of their property for the purpose of defeating payment. The purpose of the statute is to meet that situation and compel payment when the liability arises." (p. 51.)

In that case it was found that a transfer of stock was made for the purpose of evading the statute under consideration. The restriction against transfer of property is specifically placed on the stockholder but of necessity applies to the administratrix of his estate who became the title holder of stock after the death of the stockholder. (*Farmers State Bank v. Callahan*, 123 Kan. 638, 256 Pac. 961.) Instead of creating a lien or declaring a preference, which could have

been done in a few words if that had been the purpose of the legislature, it stopped with the prohibition of the transfer of property after a bank becomes insolvent. It went that far towards frustrating a recognized evil of a sham transfer to an accomplice from whom no recovery could be had and left the appropriation of the property to existing laws. Many restrictions are imposed by the legislature in other statutes which go no further than the language of the act implies. A few of these are set out in *Glenn v. Callahan*, supra, but since the legislature in plain and unambiguous language declared a policy of restraint of transfer, one appropriate to the evil to be remedied, there is no authority in the court to revise the law by adding a provision creating a lien or in requiring that a liability shall be preferred to all other unsecured liabilities. Such an interpretation in this case would operate to make a new classification of demands against an estate and one in conflict with the existing law without anything in the title or body of the act indicating an intention of modifying or repealing statutes providing for the order in which claims shall be paid or liabilities discharged. In interpreting a statute the safer rule for us to follow is to ascertain the true intent of the legislature. That intent is to be derived in the first place from the words used, and when that intent is apparent and is appropriate to the obvious purpose of the act we should give that intent effect rather than to search for another meaning, although we might think some other policy would be more effectual. That rule precludes the view that the legislature had in mind the creation of a lien or the making of a preference when it enacted R. S. 9-156. We are referred to the case of *Wheeler v. Johnson*, 26 F. (2d) 455, as supporting a contrary view. That case involved the question whether a conveyance of real estate by a stockholder of a closed bank in discharge of a double liability under the state statute constituted a preference under the federal bankruptcy law, and it was held that it was not, a preference under that law. It was the view of that court that the provision of R. S. 9-156 did not create a lien but that under the bankruptcy act the double liability was entitled to priority over general creditors, and that the provision of the bankruptcy act that "debts owing to any person who by the laws of the states or the United States is entitled to priority" (11 U. S. C. A. § 104) justified that priority. When that decision was made the state

statute had not been interpreted by this court, but whatever may be the rule in the application of the statute to a bankruptcy proceeding, we conclude that the statute in its ordinary meaning and application does not give a lien or preference for the double liability of stockholders. The administratrix should proceed with the sale of the land of the estate and the probate court should classify the demand arising upon the double liability in accordance with the statute of descents and distribution. It follows that the judgment decreeing that the claim of the receiver is prior in right to all unsecured claims, and that the administratrix has no legal right to transfer the property free from the preferred claim for the double liability, must be reversed and that judgment should be entered in accordance with the views herein expressed. It is so ordered.

HARVEY, J., not sitting.