No. 46,510

AUSTIN PHILLIPS, *Et Al.*, *Appellees*, v. FRED R. VIEUX, *Et Al.*, *Appellants*.

(504 P. 2d 196)

Opinion filed December 9, 1972.

*James B. McKay, Jr.*, of McKay & McKay, of El Dorado, argued the cause, and *Fred R. Vieux*, of Augusta, was with him on the brief for the appellants.

*R. A. Munroe*, of Augusta, attorney for appellee Phillips, argued the cause, and *Morris Moon*, also of Augusta, was with him on the brief for the appellee City of Augusta.

The opinion of the court was delivered by

OWSLEY, J.: This action involves the question of whether a grocery store may be constructed on plaintiff's land under a comprehensive zoning ordinance adopted by the City of Augusta, Kansas.

The action is in the nature of a declaratory judgment brought by the plaintiff-landowner. The defendant, Vieux, is a practicing attorney who owns an interest in real estate presently occupied by a retail grocery store located within 200 feet of the property owned by plaintiff. Subsequently, other persons were named parties defendant and were permitted to adopt all the defendant's views, pleadings, motions, interrogatories, and objections as their own. The City of Augusta was also named an additional party defendant and the motion to make the Dillon Investment Company a party was denied. In referring to the defendants we are not including the City of Augusta.

On the 1st day of March, 1967, agreement was entered into between plaintiff and Dillon giving Dillon an option to purchase

the real estate owned by the plaintiff. It was agreed that $1,000 should be placed in escrow to be paid to the plaintiff upon satisfactory proof to Dillon that the plaintiff had obtained at his expense a zoning use known as retail commercial (primarily super market) on the property involved. Since that time the plaintiff has made persistent efforts to obtain proper zoning of the subject property for a grocery store. After several fruitless attempts, on January 14, 1968, plaintiff filed a suit against the City of Augusta to force rezoning of his property from residential to some form of commercial use. This case remains pending and undetermined.

On February 3, 1969, the city passed Ordinance 1132 which was a comprehensive zoning ordinance, but the plaintiff's property remained residential thereunder. On December 16, 1969, plaintiff succeeded in getting the city to pass Ordinance 1153 which rezoned his land to C-1 commercial. On December 17, 1969, the plaintiff obtained a building permit from the city in favor of the Dillon Investment Company to build a grocery store. Preparation of the land by excavation had been commenced on December 17, 1969, when Dillon received a letter from Vieux, written on his own behalf and on behalf of resident home owners, stating that C-1 commercial zoning of the plaintiff's land did not include use as a super market and any further efforts on Dillon's part to construct a super market would result in action for an injunction against Dillon. On December 29, 1969, the plaintiff filed this action for a declaratory judgment against Vieux seeking a disclosure of the names of his clients, their joinder as parties to the suit, an interpretation of C-1 commercial zoning, and determination of the legality of the use of plaintiff's property as a grocery store.

Following trial on December 8, 1970, the court found in favor of plaintiff on all issues.

On appeal the defendants contend the trial court erred in finding a justiciable controversy existed. K. S. A. 60-1701 (Declaratory Judgment) reads as follows:

"In cases of actual controversy, courts of record within the scope of their respective jurisdictions shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceedings shall be open to objection on the ground that a judgment or order merely declaratory of right is the only relief requested. Controversies involving the validity or interpretation of deeds, wills, or other instruments of writing, express trusts, statutes, municipal ordinances, and other government regulations, may be so determined, and this enumeration

does not exclude other instances of actual antagonistic assertion and denial of right."

This statute was designed to fulfill a need in our system of jurisprudence such as exists in this case. The controversy between the parties to this action arose when the plaintiff attempted to use his property in accordance with the ordinances of the city. The letter written by the defendant, Vieux, challenged the right of the plaintiff to use the property in the manner contemplated. There can be no doubt that an "actual controversy" existed between the parties. The merit of this statute is that it provides a means of determining rights and liabilities before parties are required to expend substantial sums of money in proceeding to act under questionable circumstances. The plaintiff maintains under his interpretation of the ordinance that a grocery store as presented by Dillon may be built on the property. The defendants maintain the ordinance prohibits the store proposed by Dillon which they classify a super market. This declaratory judgment statute provides a means of settling the controversy without requiring actual construction.

The statute specifically refers to controversies involving municipal ordinances and in *State Association of Chiropractors v. Anderson,* 186 Kan. 130, 348 P. 2d 1042, we said:

". . . It has long been settled courts also have jurisdiction, under the Declaratory Judgment Act, to determine the validity of statutes or ordinances before a party undertakes to act in apparent violation thereof. That is the purpose and intent of the remedial relief contemplated by the act. . . ." (p. 135.)

Defendant argues that the failure of the court to join Dillon as a party somehow prevents the existence of a justiciable controversy. We are unable to follow defendant's argument. While we agree Dillon might be a proper party, we cannot agree that Dillon is a necessary or indispensable party. We defined these terms in *Cities Service Oil Co. v. Kronewitter,* 199 Kan. 228, 428 P. 2d 804, as follows:

"Proper parties are those without whom the cause might proceed but whose presence will allow a judgment more clearly to settle the controversy among all the parties. Necessary parties are those who must be included in an action either as plaintiffs or defendants unless there is a valid excuse for their nonjoinder. Indispensable parties are those who must be included in an action before it may properly go forward." (Syl. ¶ 1.)

As we view this situation, Dillon, although undoubtedly interested

in this litigation, has no actual right or claim in this property until after this lawsuit is determined. As we read the option to purchase there is no consideration for granting the option until the zoning matter is clear. There is no merit to the argument that Dillon is such a necessary or indispensable party that this action cannot proceed to determine the actual controversies that otherwise exist.

Defendants also argue that since there was no valid contract between plaintiff and Dillon the trial court did not have jurisdiction to determine a matter which was speculative. The trial court held the contemplated use of the property was not speculative. The record supports this finding and it will not be disturbed on appeal.

Defendants further argue that when another action is pending to determine the same issues a subsequent action should be dismissed. This contention as applied here is without merit. The prior action involved an ordinance since discarded. Furthermore, the prior action involved plaintiff and the city. The defendants in this action were not parties to the prior action.

Defendants next contend that this action cannot be maintained because it requires determination of fact issues of major proportion and cites *Hays v. Rymph,* 191 Kan. 361, 381 P. 2d 326. As we view it, a decision on the issues which control this action is not based on any disputed questions of fact. In *Hays* we stated:

"While a declaratory judgment action may be maintained, although it involves the determination of a disputed question of fact, it may not be used where a question of fact is the main issue or where the object of the action is to try such fact as a determinative issue." (Syl. ¶ 2.)

Defendants argue that Ordinance 1153 rezoning plaintiff's land from R-2 to C-1 classification (as defined by Ordinance 1132) is invalid because it is "spot zoning." We considered similar situations in *Arkenberg v. City of Topeka,* 197 Kan. 731, 421 P. 2d 213, and *Coughlin v. City of Topeka,* 206 Kan. 552, 480 P. 2d 91. The general purport of these cases is that "spot zoning" may be unreasonable and invalid when it singles out a small parcel of land for use classified differently from the surrounding area, primarily for the benefit of the owner of the property and to the detriment of the area and other owners therein. On the other hand, "spot zoning" is not unreasonable and invalid if it is related to the general welfare and the best interests of the community-at-large. The proper approach to judicial review of zoning action by city governments is set forth in *Arkenberg* as follows:

". . . The power of the court is limited to determining (1) the lawfulness of the action taken, that is, whether procedures in conformity with law were employed, and (2) the reasonableness of such action. As to the second, the court may not substitute its judgment for that of the governing body and should not declare the action of the latter unreasonable unless clearly compelled to do so by the evidence. There is a presumption that the governing body acted reasonably and it is incumbent upon those attacking its action to show the unreasonableness thereof. . . ." (p. 735.)

It follows that the defendants in this case must establish by a preponderance of the evidence that the city council's action in rezoning plaintiff's land from R-2 to C-1 classification was unreasonable. The record discloses that a public hearing was held before the planning commission of the city, in which the proposed plan for the use of plaintiff's property was disclosed and the significance of that use in relation to the public welfare of the city was fully developed. On appeal to the district court the issue of public welfare was again fully explored, which resulted in the finding of the trial court that the rezoning ordinance was valid. The trial court further stated that in making this determination it took into consideration the following matters:

"a. The city commission determined the re-zoning would promote the public welfare.

"b. The designation of the property as C-1 conformed with the practice of the planning commission and the city in its designation of certain other areas as C-1.

"c. There existed a non-conforming similar use, Hank's Superette, diagonally across the street from plaintiff's property.

"d. Part of plaintiff's property had formerly been used for commercial purposes.

"e. The present structures on the premises are run down and are a detriment to the community.

"f. When they re-zoned the property, the planning commission and city commission took into consideration traffic patterns and the effect on other nearby property.

"g. The size of the property involved fits it well to the intended use."

The matters considered by the trial court were covered at the public hearing before the planning commission as well as at the hearing in the trial court. The defendants have failed to meet their burden to show the ordinance is unreasonable. We agree with the trial court in its findings and conclusions on this issue.

Aticle XI of Ordinance 1132, entitled " 'C-1' NEIGHBORHOOD SHOPPING DISTRICT", reads as follows:

"SECTION 1. INTENT AND PURPOSE OF DISTRICT: It is the intent of the

'C-1' Neighborhood Shopping District to permit retail sale of convenience goods and services similar in nature to uses allowed in District 'C-P'. This district is established for the purpose of making present uses and existing neighborhood shopping areas conform.

"SECTION 2. DISTRICT REGULATIONS: In District 'C-1', no building shall be used and no building or structure shall be erected, altered or enlarged, which is arranged, intended or designed for other than one of the uses listed in SECTION 3 below."

Section 3 of Article XI, entitled "USE REGULATIONS", covers 31 permissible uses, No. 14 being "Food stores (grocery, meat and delicatessen)."

Defendant complains that the court did not admit proffered evidence of trade definitions of terms used in the C-1 classification and incorrectly interpreted the ordinance. The rules for judicial interpretation of statutes are equally applicable to municipal ordinances. (*Desser v. City of Wichita,* 96 Kan. 820, 153 Pac. 1194.) This court has many times stated the primary rule for the construction of a statute is to determine the legislative intent from the language used therein. If the language used is plain and unambiguous the court should follow the intent expressed by the words within the statute and not look beyond them in search of some other purpose or meaning. (*Alter v. Johnson,* 127 Kan. 443, 273 Pac. 474, Syl. ¶ 1; *Hand v. Board of Education,* 198 Kan. 460, 426 P. 2d 124, Syl. ¶ 1.) The language of Ordinance 1132 setting forth the intent and uses of land zoned C-1 being plain and unambiguous, the court was justified in confining its interpretation to the words of the ordinance.

It is the duty of courts to reconcile various provisions of an act in order to make them consistent, harmonious, and sensible if that can be done without doing violence to plain provisions therein contained. (*State v. Sumner,* 169 Kan. 516, 219 P. 2d 438, Syl. ¶¶ 1, 2, and 3; *Gnadt v. Durr,* 208 Kan. 783, 494 P. 2d 1219.)

Defendant contends the term "neighborhood" is used as a limitation upon the area to be served. If this is so it is difficult to reconcile that meaning of "neighborhood" to the specific provisions allowing use for banks and lending institutions; electric and telephone sub-stations; medical, dental and health clinics; motels; non-profit religious, educational and philanthropic institutions; etc. These obviously denote a dependence upon city-wide patronage rather than a limited residential patronage.

To interpret the general terms "convenience goods and services"

and "neighborhood" according to the usage of one trade or business, *e. g.*, the grocery business, as defendant urges, would be to disregard their plain meaning as applied to other enumerated uses. Hence, the court's refusal to admit evidence as to the definitions of words as applied to one trade or business was justified.

The trial court held the plaintiff's property may be rightfully used for any use permitted under C-1 classification, including construction and operation of a grocery store. We agree with the trial court. The issue before the trial court was whether the operation proposed by Dillon was permissible under the ordinance. It is inherent in the judgment that use of the word "grocery" includes the use by Dillon as presented in evidence.

So considered, the judgment is affirmed.

FONTRON, J., not participating.