No. 47,035

Lee E. Weeks, Barney Davis, Robert H. Fouts, Keith Downing, and Charles B. Hurst, *Appellants,* v. City of Bonner Springs, Kansas, a Municipal Corporation, and Rex A. Stith, *Appellees.*

(518 P. 2d 427)

Opinion filed January 26, 1974.

*Leonard O. Thomas,* of Kansas City, argued the cause, and *Thomas F. Sullivan,* of Weeks, Thomas, Lysaught, Bingham & Johnston, Chartered, of Kansas City, was on the brief for the appellants.

*John H. Fields,* of Carson, Fields, Kugler and Boal, of Kansas City, argued the cause, and *D. H. Corson, Jr.,* of Kansas City, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action challenging the issuance of an occupancy permit to use a dwelling house in a zoned residential area as a professional office as authorized by the zoning ordinance of Bonner Springs, Kansas. The trial court denied injunctive relief and appeal has been duly perfected.

Dr. Rex A. Stith (defendant-appellee) has resided and practiced as a chiropractor in Bonner Springs, Kansas, for many years. His current home address is 116 Cypress, and has been for approximately fifteen years. From November 1940, to February 4, 1972, his business office was located at 113 East Second Street, which was zoned as a business area. Some time in early 1971 he learned that his office location was to be demolished by an urban renewal project. Accordingly he began to inquire about relocating.

Since 1968 Dr. Stith has owned a one-story frame house and lot located at 634 North Nettleton in Bonner Springs. He originally purchased it for investment purposes, and has used it as rental property. After learning of the urban renewal project he sought to convert the 634 North Nettleton house into an office. The area in which the house is located is zoned as a one-family residential district. The pertinent Bonner Springs ordinance provides buildings or premises within such a zone may be used for the following purposes:

\* \* \* \* \*

"a. One family dwelling and accessory building, including a private garage.

"b. Public, private educational or parochial schools, churches, and non-commercial community buildings.

"c. Public buildings, public parks or public playgrounds, home gardens, home occupations, essential public utilities, and *offices and studies of professional persons,* provided, that none of these uses shall have a name plate exceeding one (1) square foot in area or any other advertising sign of any character, *and provided further that no* 'home occupation' or *office use shall be undertaken without an occupancy permit issued by the administrative officer* as governed herein." (Emphasis added.)

On July 27, 1971, pursuant to the above ordinance Dr. Stith requested the city planning commission to authorize the issuance to him of an occupancy permit to use the house as an office and study of a professional person. On August 31, 1971, the request was denied. Later, on September 7, 1971, the Bonner Springs city council requested a further report from the planning commission concerning Stith's application. On September 28, 1971, the planning

commission met and the following is reported in the minutes of the meeting:

"The letter from Randy Gustafson stating the Council's reason for asking the Planning Commission to reconsider their decision to deny Dr. Stith an occupancy permit at 634 N. Nettleton was read. Mr. Lee Weeks, Mr. Robert Fouts and Mr. Barney Davis were present and Mr. Weeks reported that a protest had been filed that day. Also, he presented and read a memorandum in support of the protest. Dr. Stith was present and stated that he did not file under the category of home occupation, but under office of professional persons and he feels the Ordinance does separate them. Mr. Roberts moved that the Planning Commission again recommend to the council that this occupancy permit be denied because the overall planning of the City is the Commission's job and *it is against their interpretation of the Ordinance.* Also, because the protest filed by adjoining property owners should be considered. Mr. Mackey seconded the motion. All voted in favor." (Emphasis added.)

Subsequently, on October 5, 1971, the city council approved the planning commission's recommendation to deny Stith's request. After the city council's denial and until January 18, 1972, Stith did not attempt to file or present any application pertaining to an occupancy permit for the Nettleton property.

During the summer and fall of 1971, before the proceedings concerning his occupancy permit had culminated, and during the winter of 1971, after his application had been denied, Stith converted the interior of the 634 N. Nettleton dwelling from an ordinary one-story frame house with four rooms and a bath into an office arrangement. At the time of the trial Stith had expended $3,000 on the alterations and anticipated another $2,000 in expenditures for future plans. The exterior of the house was not altered at all except his professional emblem, about the size of an automobile license plate, was fixed to his front door. Dr. Stith contemplates constructing an asphalt or cement driveway which will lead to a parking area, designed to accommodate five cars at the rear of the house.

Dr. Stith testified that his practice is largely by appointments, though there is an occasional drop-in patient, and that he does not handle any types of emergency cases which would expose the area to emergency vehicles. He employs one receptionist, who handles appointments, correspondence, and records. He does not presently have any associates, never had any nor does he ever intend to associate with, or hire any.

On the evening of January 18, 1972, Dr. Stith again appeared before the city council during a regularly scheduled meeting to

request reconsideration of his application for an occupancy permit. He submitted a petition bearing between 250-300 signatures. Later it was determined that only twelve people signing it were residents of Bonner Springs, the rest presumably begin signed by Dr. Stith's out-of-town patients. Dr. Stith testified that prior to this meeting he talked to individual members of the city council concerning his application. Some of those discussions led him to believe his application might be authorized upon reconsideration by the city council. None of the homeowners living adjacent to, or in the vicinity of 634 N. Nettleton, who had opposed Dr. Stith's application in the previous proceedings, were notified of his intent to reapply on January 18, 1972. The city council's minutes concerning Dr. Stith's reapplication and the council's disposition were recorded as follows:

"Dr. Rex Stith appeared with a letter outlining past action on his request to open a professional office in property owned by him at 634 North Nettleton which has previously been denied. He asked the council to review his request and to give it further consideration. He presented a list of some of his patients who object to him leaving the City. After some elaboration Mr. Wasson moved that Dr. Stith be given a permit to open his office at 634 North Nettleton. Mr. Clark seconded the motion and all voted in favor. Mayor Peterson declared motion carried."

The Bonner Springs ordinance specifies that the occupancy permit is to be issued by the "administrative officer". Dr. Stith learned from inquiries with city councilmen and the mayor that no city official was designated as the "administrative officer", but that the city clerk performed those duties. Pursuant to the city council's authorization for Dr. Stith to "open a professional office in property owned by him at 634 North Nettleton", the city clerk issued him a document entitled "City License". The city license was designated as number 1083 and recites,

"DR. REX STITH having paid the City Clerk of the City of Bonner Springs, Kansas, TEN and no.100 DOLLARS as evidenced by the receipt therefor, and having complied with the Ordinances of said City relating to license, is hereby authorized and licensed to serve as Chiropractor at 634 North Nettleton for a period of one year within the corporate limits of said City from 12 o'clock midnight, December 31, 1971, to 12 o'clock midnight, December 31, 1972, subject to the provisions of said Ordinance."

The license is dated January 24, 1972, and signed by the mayor and city clerk.

Dr. Stith testified in a deposition proceeding that the city license he received from the clerk, subsequent to the January 18 city

council authorization, was the same type of document he had received from the clerk every year since 1940 to practice chiropractic at the location of his former business office, and that he had always been charged the same fee.

On February 2, 1972, suit was instituted by plaintiffs-appellants, persons living adjacent to or in the vicinity of 634 North Nettleton, alleging that the maintenance of Dr. Stith's office in their residential area "will cause these plaintiffs irreparable harm and depreciate their property, cause them inconvenience, and turn what was a quiet residential area into a commercial zone." The action sought a permanent and temporary order enjoining Dr. Stith from using the 634 North Nettleton premises as an office, and the City of Bonner Springs (defendant-appellee) from permitting him to do so. The petition alleged the city council's authorization for the office did not comply with the governing ordinances in that no "certificate of occupancy" was issued by the administrative officer, and that permitting the office to exist constitutes unreasonable and discriminatory spot zoning. Both defendants answered by denying the procedures concerning Dr. Stith's authorization were improper, or that their actions constituted unreasonable and discriminatory spot zoning.

On April 4, 1972, after issues were joined and Dr. Stith's deposition taken, the plaintiffs filed a motion for summary judgment. Subsequently, on April 20, 1972, Stith filed a motion of summary judgment alleging that "plaintiffs have no standing to maintain this action". On June 8, 1972, the court advised all parties of its decision as follows:

\* \* \* \* \*

"The Court finds that the court has jurisdiction of the subject matter, the parties to the action and does find that the City of Bonner Springs, Kansas by and through their commission did act within their authority in permitting the defendant Rex A. Stith to operate his chiropractic offices from the single-family dwelling in question.

"The Court further finds that such a use of this one-family dwelling owned by Mr. Stith and used in the capacity of a single chiropractic office for his individual use does not violate the zoning ordinance which is applicable to this piece of property, and further the court specifically finds that the acts of the governing body of the City of Bonner Springs, Kansas was not arbitrary, capricious or unreasonable."

From the foregoing findings and judgment appeal has been duly perfected by the plaintiffs.

The appellants first contend the trial court erred in denying them

an injunction because Stith is operating his business in a single family dwelling located in a residential area without an occupancy permit in violation of the Bonner Springs ordinance.

The appellants argue the document entitled "city license" which the city clerk issued to Stith on January 24, 1972, pursuant to the city council's authorization is not a certificate of occupancy as required by the city ordinance, but an occupational tax license imposed on Stith as a tax in return for granting him the privilege of engaging in business within the city. The appellants point out the form of the January 24, 1972, "city license" is identical to the city licenses previously issued to Stith for the privilege of engaging in his business within the city. The appellants also complain that the city clerk is not an "administrative officer" as contemplated by the ordinance.

The appellees' position is that Stith applied for an occupancy permit and, that the city council was aware of this and intended to authorize the issuance to Stith of whatever permit was necessary for him to open his office at the subject location. The appellees urge that the particular designation of the permit and the designation of the issuing officer is immaterial, and that there has been substantial compliance with the ordinance.

It must be conceded the January 24, 1972, permit is identical in form to the occupational tax license which the City of Bonner Springs had issued for some time. K. S. A. 1973 Supp. 12-180 (formerly K. S. A. 1972 Supp. 12-165) prohibits cities from imposing excise taxes, except sales taxes, and provides as follows:

". . . That the provisions of this section shall not be construed as prohibiting any city from . . . (b) imposing an occupation tax or license fee for the privilege of engaging in any business, trade, occupation or profession, or rendering or furnishing any service, but the determination of any such license fee shall not be based upon any amount the licensee has received from the sale or transfer of personal or real property, or for the rendering or furnishing of a service, or on the income of the licensee; . . ."

The question is whether, considering the circumstances, the document issued to Dr. Stith on January 24, 1972, constitutes a certificate of occupancy even though it is not so labeled.

The record discloses that Stith's August 31, 1971, application to the Bonner Springs planning commission was headed as follows:

"OCCUPANCY PERMIT APPLICATION

Zoning Ordinance of Bonner Springs, Kansas, Page 7—Section IV— Paragraph 2—Subparagraph C

'Offices and studies of professional persons' "

The application complied fully with Section XIX of the Zoning Ordinance of Bonner Springs, Kansas. It was accompanied by a plat drawn to scale, showing the actual dimensions of the two lots to be used. The application and Dr. Stith's testimony show that he was requesting an *occupancy permit* for the establishment of his professional office. Futhermore, the city council's January 18, 1972, minutes reflect that the council voted "Dr. Stith be given a permit to open his office at 634 North Nettleton". Neither the application nor the authorization suggest an occupational tax license was the subject of consideration. Dr. Stith learned from conversations with the mayor and councilmen that no Bonner Springs officer was designated as the "administrative officer".

It is clear from the record the city council and the city clerk intended the January 24, 1972, document to serve as an occupancy permit. We see no reason why the city council of Bonner Springs could not utilize the January 24, 1972, document to serve as an occupancy permit, or the dual function of an occupancy permit and an occupational tax license when it desired to do so. Here the city clerk performed the clerical duty of issuing the permit in accordance with the approval of the council. The council was not compelled to designate an "administrative officer" by that name. The city council was authorized to approve the issuance of an occupancy permit under the ordinance, thereby undertaking the administrative function itself, and delegating the clerical function of its issuance to the city clerk. Having done so, the appellants' challenge on this point is without merit.

The appellants next contend that even if the January 24, 1972, "city license" is construed as a certificate of occupancy the council's authorization is nonetheless void as violative of the city ordinance.

The appellants argue the only logical interpretation of the Bonner Springs zoning ordinance is that a professional person living in a residential district may use a portion of his, or her residence as an office, while a person who desires to maintain an office which is not part of his residence is required to build and maintain that office in separately zoned commercial areas. Appellants call our attention to the fact that there are provisions in the "C-1 Commercial District Regulations" for business or professional offices and in the "C-2 Office Building District Regulations" providing for various professional offices, including physicians' offices. They

conclude these considerations make it clear the Bonner Springs ordinance does not contemplate offices such as that of Dr. Stith's in residential areas.

The appellants cite, Anno.: Zoning—Professional Office, 24 A. L. R. 3d 1128; and Zoning—Accessory Use—Home Occupations, 73 A. L. R. 2d 439, as articles supporting their construction of the Bonner Springs ordinance.

The articles above cited pertain to ordinances authorizing professional offices as an accessory or incidental use to the main use permitted in a particular zoning district. These ordinances must be distinguished from the ordinance of Bonner Springs here under consideration which does not require "offices and studies of professional persons" to be an accessory to or incidental to the use of premises as a residence.

*Phillips v. Vieux,* 210 Kan. 612, 617, 504 P. 2d 196, deals with the interpretation of an ordinance. In the opinion the court said:

". . . The rules for judicial interpretation of statutes are equally applicable to municipal ordinances. (*Desser v. City of Wichita,* 96 Kan. 820, 153 Pac. 1194.) This court has many times stated the primary rule for the construction of a statute is to determine the legislative intent from the language used therein. If the language used is plain and unambiguous the court should follow the intent expressed by the words within the statute and not look beyond them in search of some other purpose or meaning. (*Alter v. Johnson,* 127 Kan. 443, 273 Pac. 474, Syl. ¶ 1; *Hand v. Board of Education,* 198 Kan. 460, 426 P. 2d 124, Syl. ¶ 1.) . . ."

Section IV of the ordinance here under consideration for the "R-1, One-Family Residential District Regulations", limits the use of buildings and premises to one-family dwellings and accessory buildings; schools, churches, and non-commercial community buildings; public buildings, public parks or playgrounds, home gardens, essential public utilities, "home occupations . . . and offices and studies of professional persons", provided an occupancy permit is issued by the administrative officer.

We cannot agree with appellants' interpretation that a resident may utilize only a portion of his dwelling as an office. If so, then no distinction exists between "offices and studies of professional persons" and "home occupations". Section II of the ordinance defines home occupation as, "Any occupation or profession carried on by a member of a family residing on the premises". There would be no reason for the Bonner Springs legislative body to separately list "home occupations" and "offices and studies of

professional persons", if a different use was not intended. The plain and unambiguous language of Section IV of the ordinance authorizes the use of dwellings in residential districts as professional offices when an occupancy permit is obtained. Nowhere does the ordinance require the professional person to reside in the dwelling used as an office. Only where the occupancy permit is issued for "home occupations" does the ordinance require a member of the family to reside on the premises.

It is true the Bonner Springs ordinance authorizes professional offices in C-1, Commercial Districts, and doctors offices in C-2, Office Administration Districts. However, that does not preclude the authorization of professional offices, such as the one here, in residential areas where the intent of the ordinance is clear.

Appellant argues the appellee's office constitutes a clinic, which is defined by the ordinance as, "A group of offices used for the purpose of medical or dental treatment and consultation not including overnight accommodations." Even though Stith's building contained five rooms which presumably could be used for treating patients, it does not comprise a "group of offices", as the phrase is used in the ordinance. The Bonner Springs ordinance does not define "group of offices"; therefore, the ordinary meaning of the phrase controls. As we construe it, a "group of offices" comprising a clinic ordinarily refers to an association of two or more physicians or dentists, and does not refer to a sole practitioner who has more than one treatment room. Dr. Stith's office was not a clinic, and appellants' repeated reference to it as a "multiple office complex" and a "series of offices" does not alter that fact.

The appellants next contend the city council acted in an unreasonable manner by authorizing Stith's office in a residential area, because such action constitutes a change, modification or amendment of the Bonner Springs zoning ordinance without "due process" procedure as outlined in Section XXI of the city ordinance and in K. S. A. 1973 Supp. 12-708. Appellants also contend the city council's action constituted a variance and/or invalid spot zoning.

Section XXI of the Bonner Springs ordinance is entitled "Amendments" and prescribes a procedure whereby any amendment, modification, revision, or change of any provision of the zoning ordinance shall be initially considered by the planning commission at a regular meeting, and then the matter shall be referred with recom-

mendations to the governing body of the city for public hearing subsequent to published notice. It is unnecessary to dwell upon the requirements of K. S. A. 1973 Supp. 12-708, except to say it has various public notice provisions which must be adhered to before the governing body of a city can "supplement, change or generally revise the boundaries or regulations contained" in its zoning ordinances.

The fallacy in appellants' position is that the city council's authorization of Stith's office in a residential area was the granting of a special permit—an occupancy permit—specifically authorized by the ordinance. This is not an amendment, modification, revision, or change of any provision of the zoning ordinance demanding adherence to the procedural requirements of either the ordinance itself or K. S. A. 1973 Supp. 12-708.

The general nature of a special permit has been described in 2 Rathkopf, The Law of Zoning and Planning, (1972), as:

". . . [A] device which, if correctly planned and drafted, furnishes flexibility to a zoning ordinance in a more uniform, yet controlled, degree than the longer established method of granting variances. It permits the inclusion into the zoning pattern (either in all zones or in certain particular zones) of uses considered by the legislative body to be essentially desirable (or essential) to the community, its citizenry or to substantial segments thereof, but where the nature of the use or is concomitants (traffic congestion, density of persons, noise, effect on values, safety or health) militate against its location at every location therein or in any location without restrictions or conditions tailored to fit the special problems which the use presents." (p. 54-1.)

A special permit allows a use which is authorized by the zoning ordinance, subject to the issuance of such a permit. (3 Anderson, American Law of Zoning § 15.02 [1968].) There is no basis in the record to support the appellants' argument that the city council's action in any manner revised, amended or changed the Bonner Springs ordinance. The granting of a special permit does not constitute an amendment of an ordinance. (3 Anderson, *supra*, § 15.04.) Nor is the granting of a special permit comparable to a variance (3 Anderson, *supra*, § 15.04; 2 Rathkopf, *supra*, 54-3), or invalid spot zoning (3 Anderson, *supra*, § 15.04). A special permit is distinguished from a variance in 3 Anderson, *supra*, § 15.02 as follows:

"A variance authorizes a landowner to establish or maintain a use which is prohibited by the zoning regulations. A special permit authorizes a use which is permitted by the zoning regulations, subject to the issuance of such a permit. Thus, a variance results in a deviation from the literal import of the ordinance; a special permit results in the establishment or maintenance of a

use in the location and under the circumstances mandated by the ordinance. . . ." (pp. 86,87.)

Spot zoning was considered in *Coughlin v. City of Topeka,* 206 Kan. 552, 480 P. 2d 91, where the court said:

" 'Spot zoning' is a descriptive term rather than a legal term and spot zoning as such is not necessarily invalid. Its validity depends upon the facts and circumstances appearing in each case. (*Bucholz v. City of Omaha,* 174 Nebr. 862, 120 N. W. 2d 270.) 'Spot zoning' generally refers to the singling out of a small parcel of land for use classified differently from the surrounding area, primarily for the benefit of the owner of the property so zoned and to the detriment of the area and other owners therein. In such a case the zoning may be declared unreasonable and invalid." (p. 557.)

Here there is no showing the governing body's action singled out Dr. Stith's property and arbitrarily and unreasonably classified it differently from the surrounding area. The ordinance makes the use of premises as a professional office uniformly available to all residents in the zone, subject to the issuance of an occupancy permit. The requirement of a permit enables the governing body to maintain control and regulation over such uses. This procedure is designed to assure that the special use would be reasonably compatible with the character of the surrounding area and would not adversely affect surrounding property owners.

The term "spot zoning" is generally construed to describe a zoning amendment which is invalid because it reclassifies a small parcel in a manner inconsistent with existing zoning patterns for the benefit of the owner and to the detriment of the community without any substantial public purpose ( 1 Anderson, *supra*, § 5.04). The granting of the permit in the instant case cannot be construed as spot zoning.

The well established rules concerning judicial review of a zoning proceeding are stated in *Arkenberg v. City of Topeka,* 197 Kan. 731, 734, 735, 421 P. 2d 213, as follows:

"It must be understood that the governing body has the right to prescribe zoning, the right to change zoning and the right to refuse to change zoning. The power of the court is limited to determining (1) the lawfulness of the action taken, that is, whether procedures in conformity with law were employed, and (2) the reasonableness of such action. As to the second, the court may not substitute its judgment for that of the governing body and should not declare the action of the latter unreasonable unless clearly compelled to do so by the evidence. There is a presumption that the governing body acted reasonably and it is incumbent upon those attacking its action to show the unreasonableness thereof (*Moyer v. Board of County Commissioners,* 197 Kan. 23, 415 P. 2d 261)."

Here, however, we are not confronted with a zoning change, but

with the issuance of a special permit known as an occupancy permit, authorization for which is embraced within the provisions of a residential zoning classification. The granting or denial of such permit falls within the discretionary powers of the administrative tribunal, and absent a showing that there has been an abuse in the exercise of that power of discretion, the action of the administrative tribunal cannot be disturbed. (*Lira v. Billings*, 196 Kan. 726, 414 P. 2d 13.) Accordingly, from this approach the trial court's determination that the appellees' motion for summary judgment should be sustained cannot be disturbed.

Our decision herein should not be construed as authoritative on matters of administrative procedure undertaken by the parties and related in the facts. The fragmentary record presented and briefing does not permit an intelligent analysis of administrative procedural steps taken or the requirements of the ordinance. It is to be noted the city council of Bonner Springs did not appoint an "administrative officer" mentioned in the ordinance. Section XIX of the ordinance specifically covers "Construction and Occupancy Permits", and paragraph 9 thereunder provides a right of appeal in the following language: "A ruling of the Administrative Officer may be appealed." It further provides the city clerk shall refer each appeal to the planning commission at the next following scheduled meeting, and the planning commission shall forward the appeal to the "Board of Appeals", designated in Section XX of the ordinance, together with its recommendations for action. Section XX provides, "A Board of Appeals shall be appointed by the City Council in accordance with law and until such board is appointed its function shall be performed by the City Council."

The record does not disclose whether a Board of Appeals was appointed.

The appellees argue that a literal reading of the above two sections of the ordinance indicates that action of the city council may not even be required unless an administrative appeal is filed. The appellees then assert that their motion for summary judgment was properly sustained because the appellants were not entitled to seek relief in a court of law (citing, K. S. A. 60-2101 [a]), until they, as litigants, had exhausted their administrative remedy. (See, *Pelican Transfer & Storage v. Kansas Corporation Commission*, 195 Kan. 76, 402 P. 2d 762.)

On the record here presented Dr. Stith has asked for no more

than Section IV of the ordinance entitled him to have. He did not ask for spot zoning, nor a variance, nor a special exception. He did ask for an occupancy permit to open his office at 634 North Nettleton in Bonner Springs, Kansas, and by vote of the governing body of the city at a regular session he received that permission, followed by the issuance of a permit. On the present state of the record we cannot base our decision on the fact, if it be a fact, that the appellants neglected to take a proper administrative appeal from that decesion. (See, K. S. A. 60-2105.)

The judgment of the lower court is affirmed.

FROMME, J., not participating.