No. 47,219

GENE L. DENT, JOHN H. FIELDS, KENNETH HAMILTON, WALTER G. KLAMM, THOMAS E. MAULDIN, VIOLET MEDLEY, HARRIETT O'BRIEN, WILLIAM A. STRUMILLO, *Appellants*, v. CITY OF KANSAS CITY, KANSAS, a Municipal Corporation, *Appellee*, and WESTBOROUGH DEVELOPMENT, INC., *Appellee*.

(519 P. 2d 704)

Opinion filed March 2, 1974.

*John H. Fields*, of Kansas City, argued the cause, and *Walter G. Klamm*, of Kansas City, [both *pro se*], was with him on the brief for the appellants.

*Edward H. Powers*, of Kansas City, argued the cause for Westborough Development, Inc., [intervenor], appellee.

*A. B. Howard*, Assistant City Attorney, of Kansas City, was on the brief for the City of Kansas City, Kansas, appellee.

The opinion of the court was delivered by

KAUL, J.:  Plaintiffs-appellants brought this action to test the reasonableness and legality of an ordinance enacted by defendant-appellee, City of Kansas City, Kansas, rezoning a tract of land owned by defendant-intervenor, Westborough Development, Inc. In their petition appellants describe themselves as citizens, residents, taxpayers and owners of property in the city and they allege that a number of them own real estate in an addition developed by Westborough Development, Inc., known as Normandy West, which lies adjacent to, and south of, the rezoned subject property owned by Westborough Development, Inc.

For convenience the appellants will be referred to as plaintiffs; intervenor-Westborough Development, Inc., as Westborough, and Kansas City, Kansas, as the city.

The district court after hearing the matter filed comprehensive findings of fact and conclusions of law and entered judgment for the city and intervenor. Plaintiffs filed this appeal.

Plaintiffs reassert on appeal essentially the same grounds upon which the rezoning ordinance was challenged in the district court. Plaintiffs' contentions may be resolved into three categories: first, the rezoning amounted to "spot zoning" and was, therefore, unreasonable; second, several alleged procedural deficiencies resulted in the illegality of the proceedings; and, third, intervenor-Westborough is by its conduct estopped from seeking a change of zoning classification on the subject property.

The land in question consisted of a twenty-one acre tract situated in the northeasterly portion of a tract of seventy-two acres, all of which was originally owned by Westborough. The tract is bounded on the north by Parallel Avenue, a major thoroughfare, which is sometimes referred to as Parallel Parkway. To the south of the twenty-one acre subject tract, Westborough has developed the Normandy West Addition, which at the time of trial consisted of thirty-five homes and approximately eighty-five platted but unsold lots. Normandy West consists of a First and Second Addition and is described as a high-class residential neighborhood possessing features of more than ordinary value to a residential community. Plaintiffs, Dent, Fields, Hamilton, Klamm and Strumillo reside in Normandy West.

The zoning classification of Normandy West is "A-1" single family district. The rezoning ordinance challenged herein changed the zoning of the twenty-one acre tract from "A-1" to "E-2" which calls for low density, garden type apartments. The twenty-one acre tract involved has not been platted. The background history of the present controversy began as long ago as 1968 when Westborough filed petition No. 831 with the city requesting a change of zoning for the twenty-one acre tract to "E" apartment district. The planning commission recommended the change and the city commission accepted the recommendation by the adoption of Ordinance No. 47795 on April 3, 1969, changed the zoning to "E-2" apartment district. Ordinance No. 47795 was challenged in the district court by apparently the same parties as plaintiffs in the instant case. After a trial the district court found procedural defects in the adoption of Ordinance No. 47795, including the improper composition of the city planning commission at the session in which rezoning

was recommended. The district court announced its decision determining Ordinance No. 47795 to be invalid on August 25, 1970. On the same day counsel for Westborough wrote a letter to the planning director requesting that a new petition be filed by the city in order to correct the previous procedural defects.

On September 2, 1970, Robert J. Leanna, city director of planning, referred the matter by a memorandum to the board of city commissioners together with a petition by the planning department of the city pursuant to K. S. A. 1973 Supp. 12-708 seeking a change of zoning. In his memorandum Mr. Leanna stated that the planning staff recommends that the city commission consider having the attached petition reviewed by the legal department and filed with the city clerk without payment of a petition fee.

In due course, the petition was referred by the city commission to the planning commission where several hearings were had culminating in a recommendation for rezoning by unanimous vote of the planning commission.

After a hearing, on December 30, 1970, at which affected and interested parties appeared, the city commission enacted, by a two to one vote, Ordinance No. 49288 rezoning the subject property. This is the ordinance under attack herein.

On January 29, 1970, plaintiffs filed their petition in this action against the city seeking a determination that the rezoning was unreasonable and unlawful and requesting injunctive relief. Westborough was granted leave to enter the case as an intervening defendant.

We deem it unnecessary to restate in detail the rules governing procedural matters and the scope of judicial review in actions challenging zoning ordinances. In summary, our decisions hold it is incumbent upon those attacking the action of the governing body to show the unreasonableness of such action. The power of a court is limited to determining whether procedures in conformity with the law were employed and the reasonableness of such action. There is a presumption that the governing body acted reasonably and the court may not substitute its judgment for that of the governing body nor find the action thereof unreasonable unless clearly compelled to do so by the evidence. (*Phillips v. Vieux*, 210 Kan. 612, 504 P. 2d 196; *Coughlin v. City of Topeka*, 206 Kan. 552, 480 P. 2d 91; *Waterstradt v. Board of Commissioners*, 203 Kan. 317, 454 P. 2d 445; *Bodine v. City of Overland Park*, 198 Kan. 371,

424 P. 2d 513; and *Arkenberg v. City of Topeka,* 197 Kan. 731, 421 P. 2d 213.)

Plaintiffs' first contention is that the change of zoning here involved is an unlawful application of "spot zoning." The trial court's findings of fact Nos. 15 and 16 deal specifically with the issue of "spot zoning." They read:

"15. The 21 acres concerned herein is situated at the intersection of 77th and Parallel in Kansas City, Kansas. Numerous commercial and multiple family developments are situated in close proximity to said land. The construction on this tract of apartments meeting 'E-2' requirements would constitute a buffer between Normandy West Subdivision and Parallel Avenue, a much traveled trafficway with several commercial installations situated nearby.

"16. The evidence fails to establish that the change of zoning in question is unreasonable in light of the character of the neighborhood; is to any extent in derogation of the master and comprehensive plan of said City; will cause depreciation in value of the plaintiffs' property and other surrounding properties; constitutes spot zoning; and was approved without proper regard for all of the factors entitled to consideration under the specific facts and circumstances of this case."

The record discloses ample evidence to support the findings recited above. Mr. Jack Forbes, an M. A. I. appraiser, described the subject property and adjacent developments. He testified that at the intersection of Parallel Avenue and 77th Street there is a retail development, including a pest control business, two service stations, a supermarket, and a Seven-Eleven store; and that proceeding south along 77th Street, adjacent to the subject property, there is a development consisting of a Presbyterian Home, and some office buildings. He further testified that immediately to the west of the subject property is an office building, nearing completion, and immediately to the west of the office building is a tract of land used as a combination office and storage yard by the Southwestern Bell Telephone Company. Forbes further testified that across the street on the north side of Parallel Avenue, which runs along the north side of the subject tract, there is multiple family zoning and commercial use, and that Parallel Avenue is a four-lane street with a traffic count in excess of 6000 automobiles. He further testified that the highest and best use of the subject property would be commercial and/or apartment and that single family residential development would not be economically feasible. Forbes also stated that "E-2" zoning would not adversely affect residential properties lying to the south in Normandy West; and that "E" zoning is:

"; . . . the proper development for a step down or a buffer zoning type development to start with the high traffic count, traffic artery, with commercial or apartment and step down to residential."

Forbes also explained the buffer theory in zoning and development and testified concerning a number of examples of this type of zoning in Johnson County with which he was familiar; that he had on occasions appraised homes that backup to apartments in this type of development; and that the value of such homes has in no way been adversely affected by the existence of the apartment project.

Much of the testimony of other witnesses was repetitive of that of Forbes. Louis Scherer, an officer of Westborough, testified that the "E-2" apartment development on the twenty-one acre tract would be an asset to Normandy West because as developers of land his people recognized the commercial trend of Parallel and believed that rather than downgrading toward the main artery (Parallel) where there is a lot of traffic, it would be better to upgrade it with this type of luxury apartments so that the same type of people would be attracted as those living in the subdivision. Scherer stated that the only type of houses that could be feasibly constructed on the subject property would be inexpensive houses which would be a detriment to Normandy West. Scherer said the apartments in the proposed project would have to rent for $350 monthly, the result being that Normandy West would be separated from the trafficway by these luxury type apartments occupied by the same type of people as those living in Normandy West.

Joseph H. McDowell, a former mayor of the city, testified to the same effect that a buffer between the trafficway and Normandy West was desirable because the subject tract was not suitable for single family homes which would be facing on Parallel Avenue, which was slated to be a trafficway.

Robert Leanna, the city planning director, also confirmed the advantages of a buffer zone and said that it was good zoning and good planning in order to preserve the dignity of Normandy West Subdivision. Mr. Leanna described the "E-2" apartment classification as requiring 3500 square feet of land, per unit, which is three times lower density than that required by regular apartment zoning; and that the developers of this project would provide 5180 square feet, per unit, which is sixty percent lower density than required by the new "E-2" ordinance. Mr. Leanna testified that this was the

first application under the new "E-2" apartment zoning and would offer the kind of housing the community needed because Wyandotte County was losing large numbers of professional people who would like to live in Wyandotte County, but had moved to Johnson County because luxury apartments had not been available in Wyandotte County. He also testified that high quality apartments return more in the way of taxes than they require for services which is an advantage to the community as a whole.

There was some conflicting testimony by plaintiffs, who are residents of Normandy West, that they felt that the rezoning would adversely affect the value of their properties and that they had understood that all of the Westborough land would be restricted, subject to family dwellings.

Richard W. Walsh, mayor of Kansas City, who now owns a home in Normandy West, testified that, in his opinion, the city was well-saturated with apartments and that he seriously doubted that the rezoning would be beneficial to the single family nature of that portion of the community. Mr. Dent testified that he protested the apartment zoning because there was already considerable congestion caused by apartments in the immediate area; and further that he had been led to understand that the entire area was for single family development. He admitted, however, that he knew Westborough owned seventy-one acres, but did not know the amount that had been platted. Mr. Klamm and Mr. Fields testified that they were led to believe there would be no apartment zoning. Mr. Fields knew that the twenty-one acre subject tract had not been platted.

Generally, the evidence went to the issue of the reasonableness of the rezoning, rather than tending to establish it as "spot zoning." The situation confronting the trial court was quite analogous to that posed in *Arkenberg v. City of Topeka*, 197 Kan. 731, 421 P. 2d 213, wherein it is stated:

". . . Basically, the controversy resolves itself to this: Certain residents owning their homes in the area object to the building of the proposed apartment; they have stated their reasons; these reasons have been taken into account by the zoning authorities and, in the interest of the entire city, deemed insufficient to prevent the proposed rezoning. Zoning is not to be based upon a plebiscite of the neighbors. Their wishes are to be considered but the final ruling is to be governed by the basic consideration of the benefit or harm involved to the community at large (58 Am. Jur., Zoning, § 206).

"The most that could be said from the standpoint of plaintiff and those he represents is that the matter may be fairly debatable. That being so, the court

may not substitute its judgment for that of the city in order to change the decision on the debate. . . ." (p. 738.)

We believe the trial court's findings concerning "spot zoning" are fully supported by the evidence and are manifestly correct. In the first place the subject tract can hardly be classified as a small parcel of land; second, the record is replete with testimony that buffer type zoning in this instance is reasonable and desirable and; third, there is evidence of benefit to the community as a whole.

In *Waterstradt v. Board of Commissioners*, 203 Kan. 317, 454 P. 2d 445, wherein a rezoning ordinance was challenged, we quoted these definitions of "spot zoning:"

" 'An amendatory ordinance which selects one lot, owned by one person, and creates for it a particular zoning classification different from that of the surrounding property, constitutes "spot zoning." *Parker v. Rash* (1951) 314 Ky 609, 236 SW2d 687.

" ' "Spot zoning," as usually defined, signifies a carving out of one or more properties located in a given use district and reclassifying them in a different use district. *Chayt v. Maryland Jockey Club* (1941) 179 Md. 390, 18 A2d 856.' " (p. 321.)

More recently we considered "spot zoning" in the case of *Phillips v. Vieux*, supra; where, after citing *Arkenberg v. City of Topeka*, supra, and *Coughlin v. City of Topeka*, supra, we said:

". . . The general purport of these cases is that 'spot zoning' may be unreasonable and invalid when it singles out a small parcel of land for use classified differently from the surrounding area, primarily for the benefit of the owner of the property and to the detriment of the area and other owners therein. On the other hand, 'spot zoning' is not unreasonable and invalid if it is related to the general welfare and the best interests of the community-at-large. . . ." (p. 615.)

In the portion of their brief devoted to this point plaintiffs further argue that the rezoning was a deviation from the city's comprehensive land use plan. On this point planning director Leanna testified:

". . . the term Master Plan is a rather big term, it is basically a plan showing suggested land uses that would be appropriate within the community. The Master Plan does not constitute zoning of the land."

In *Coughlin v. City of Topeka*, supra, we said:

"A city is not unalterably bound by a comprehensive land use plan. This is true whether the plan is merely recommended to the city or adopted by ordinance. . . ." (p. 557.)

After a careful examination of the record we find no reason to

disturb the trial court's findings concerning "spot zoning" or the reasonableness of the ordinance.

For their second point on appeal plaintiffs contend the city failed in several particulars to follow the provisions of K. S. A. 1973 Supp. 12-708 which delineates procedures relating to the filing of a zoning petition, the authority of the city, requirements of notice, and the function and makeup of a planning commission. Because of these alleged procedural deficiencies plaintiffs say the city had no jurisdiction to change the zoning classification of the subject property.

First, plaintiffs contend the petition is not lawfully filed because of failure to pay a filing fee and that the city could not properly file the petition. The trial court specifically found against plaintiffs on both points, and we believe correctly so. Authority for the city's action is found in K. S. A. 1973 Supp. 12-708, which reads in pertinent part:

". . . The governing body may from time to time supplement, change or generally revise the boundaries or regulations contained in such zoning ordinance by amendment. A proposal for such amendment may be initiated by the governing body, the planning commission or upon application of the owner of the property affected. . . ."

Plaintiffs argue the language of the statute quoted above somehow limits the authority of the city to the filing of a petition only in instances where the general neighborhood is being rezoned. We are unable to read any such limitation in the statute. The statute is clearly phrased in the alternative and permits the initiation of a proposed zoning change by either the governing body, the planning commission, or an affected property owner. With respect to plaintiffs' contention that failure to pay a filing fee invalidated the petition, the pertinent part of the statute reads:

". . . The governing body may establish reasonable fees to be paid in advance by the owner of any property at the time of making application for a change in zoning of the same. . . ."

As can be seen from the language employed, the establishment of a filing fee is a permissive provision of the statute and is directed only to the owner of property making an application for a change in zoning. We cannot read into the statute any requirement that the city, when it is the applicant, must pay itself a fee, and such a requirement would amount to nothing more than a mere formality.

Plaintiffs further argue that the petition was not properly filed because there was no showing of a vote by the city commission or

planning commission prior to the filing. This argument merits little consideration. The petition was considered by the city commission at its meeting on September 8, 1970, and was referred to the planning commission as provided by 12-708. This action of the city commission, as found by the trial court, is persuasive that the governing body considered the petition to be then authorized by it. In due course, the petition was voted upon by both the planning commission and the city commission. The subsequent approval by the planning commission and the city commission serves as satisfactory evidence; that the city commission approved of the filing of the petition.

Plaintiffs next contend that improper notices were given of planning commission meetings; and further that the planning commission was not lawfully constituted at the time it approved the rezoning application. Concerning these contentions the trial court specifically found:

"9. Proper notice, both by publication and by mailing, was duly given by the Planning Commission for a hearing on Petition No. 1000 to be held October 12, 1970. Three days prior thereto the Court in Case No. 33707-B issued an order restraining the defendant City from consideration of or acting upon Petition No. 1000. The Planning Commission thus took no action thereon at its meeting except to vote unanimously to hold over said petition. The said restraining order was dissolved on October 29, 1970.

"10. Petition No. 1000 was considered by the Planning Commission at its meeting on November 9, 1970, at which a quorum was present. Westborough appeared in behalf of the petition by Mr. Scherer and also by Mr. Powers, its attorney. Plaintiffs Fields and Klamm appeared in opposition. The Commission voted unanimously to approve the petition. Notice of such hearing was not published; notice by mail was given to affected property owners. A member of the Planning Commission resigned after November 9 and was not replaced prior to December 14, 1970.

"11. Petition No. 1000 was again considered by the Planning Commission at its meeting on December 14, 1970, at which a quorum was present. Proper notice of a public hearing on said date, both by publication and mailing, was given. The giving of such notice resulted from an opinion of the City Attorney to the effect that (a) inasmuch as the Planning Commission had not continued its hearing on Petition No. 1000 from October 12, 1970, (notice of which hearing had been given by publication and by mailing as aforesaid) to a definite time, a further publication notice should be made, (b) the Planning Commission has the authority to continue such a hearing to a definite time, and (c) the City itself may initiate a change of zone petition.

"12. At the meeting of December 14, 1970, Messrs. Scherer and Powers appeared on behalf of the petition and Messrs. Fields and Klamm appeared in opposition. Again the Planning Commission voted unanimously to approve the petition.

"13. Petition No. 1000 was considered by the Board of City Commissioners at its recessed regular meeting on December 30, 1970. After hearing again from the same proponents and opponents, the Board approved the zoning change and in regular session on December 31, 1970, adopted Ordinance No. 49288, which became effective on publication which was had on January 6, 1971.

"14. With respect to the publication notice of hearing and the mailing of notice of hearing to affected property owners for the meeting of October 12, 1970, the requirements of K. S. A. 12-708 as amended were met. The same is true of the mailed notice of the meetings of November 9 and December 14 and the additional publication notice re the December 14 meeting. The evidence does not establish a lack of reasonable effort on the part of the Planning Commission in ascertaining the current mailing address of property owners entitled to notice by mail."

In conclusion of law No. 3 the trial court resolved issues raised concerning procedures in this fashion:

"3. K. S. A. 12-708 as amended authorizes a City Planning Commission to hold a hearing after having given the prescribed notice, to adjourn such hearing from time to time and then make recommendations to the City Commission. The 'holding over' of Petition No. 1000 from the October 12, 1970 meeting, was nothing more than an adjournment of the hearing thereon until its next regular meeting following the removal of its disability to act occasioned by the plaintiffs' restraining order. Such disability was removed before its regular meeting on November 9, 1970. The procedural requirements of said statute were met with respect to the meeting of November 9. Nevertheless an additional publication notice and notice by mail was effected so that said petition could be brought on for hearing on December 14, 1970. The procedural requirements for holding the meeting of December 14 were likewise met. Whether the hearing on December 14 was cumulative only or was required by strict construction of the statute, the fact that a replacement for the resigned member had not been named by December 14 would not render the Commission's actions void or voidable."

The findings of the trial court with respect to notices of planning commission meetings are fully supported by testimony and exhibits reproduced in the record and we believe its conclusions of law resolve the issues in conformity with procedures directed by the statute. The principal argument of plaintiffs concerning notice given by the planning commission is that notice by mail should have been delivered to owners of all property within 200 feet of the boundaries of the subject property; and that such 200 feet should be measured by excluding public streets and ways. The record reflects that the calculation of the 200 feet perimeter in the instant case did not exclude streets. Plaintiffs concede that this written notice provision of the statute which reads:

"... written notice of such proposed amendment shall be mailed to all owners of lands located within two hundred (200) feet of the area proposed to be altered and an opportunity granted to interested parties to be heard. ..." (12-708.)

does not require exclusion of streets in computing the 200 feet distance from perimeter. Plaintiffs argue, however, that a subsequent provision, appearing in the last paragraph of the statute, must be read into the written notice provision above quoted. The provision referred to, which appears in the last paragraph of the statute, does not pertain to the written notice first above mentioned, but concerns the provisions of the statute requiring a three-fourths vote of the city commission for the approval of a zoning ordinance if a protest is filed in the office of the city clerk. The provision relates to the enumeration requirements of owners of twenty percent or more of the owners of the property proposed to be rezoned or by owners of twenty percent of the total area within 200 feet of the boundaries of the subject property measured by excluding public streets. The provisions of the statute pertaining to the requirements of a proper protest are separate and distinct and have nothing to do with the written notice requirements pertaining to the planning commission.

Plaintiffs' final procedural argument is that the planning commission was not properly constituted. This argument is based upon the fact that a member of the planning commission resigned after November 9 and was not replaced prior to the December 14 meeting, at which the planning commission voted unanimously to approve the petition. This is the matter referred to by the trial court finding No. 10 and conclusion of law No. 6. Plaintiffs argue that the ordinance establishing the planning commission (Sec. 27-16) is mandatory and requires a fifteen member planning commission. The planning commission ordinance is authorized by K. S. A. 12-701 and K. S. A. 1973 Supp. 12-702. Under 12-701 the governing body of any city may create a city planning commission which shall, under 12-702, consist of not less than seven nor more than fifteen members, two of whom shall reside outside of, but within three miles of, the corporate limits of the city. The record shows that the remaining fourteen members of the planning commission were present at the meeting on December 14. Concerning a quorum 12-708 provides as follows:

"... For action on zoning amendments, a quorum of the planning commission is more than one-half of all the members. ..."

Since fourteen members were present a quorum was constituted

in any event. We would further note that the planning commission had previously considered the same petition on several occasions and voted unanimously in favor thereof on all such occasions; and that the trial court found that the procedural notice requirements were satisfied as to the November 9 planning commission meeting.

We are fully cognizant of the rule announced in *Koppel v. City of Fairway*, 189 Kan. 710, 371 P. 2d 113, that in the enactment of a zoning ordinance the procedural provisions of the statute must be strictly followed. From the precautions taken by the city in the instant case we believe the city had the rule in mind. Obviously, the trial court carefully considered all of the procedural issues presented and we find no reason shown to disturb its findings and conclusions in this regard.

The third and final point raised by plaintiffs is that the intervenor Westborough is and should be estopped from seeking a change of zoning classification. Plaintiffs rest their contention of estoppel on two arguments. First, false representations of officers of Westborough and, second, that construction of apartments on the subject land would be in contravention of the "Articles of Incorporation of the Normandy West Homes Association and the Homes Association Declaration."

After hearing the evidence the trial court made findings of fact concerning these points:

"19. None of the property included in Petition No. 1000 is described in the Normandy West Homes Association Declaration dated March 5, 1965. No part of said 21 acre tract is located in the Normandy West Subdivision.

"20. The evidence fails to establish that Westborough or Scherer or other Westborough agents made false or misleading representations to the plaintiffs either as to the development and planned construction on the entire 72 acre tract or on the 21 acre tract in question. Westborough has continued to develop Normandy West as a high-type single-family residential area. The evidence does not establish conduct on the part of Westborough or its agents such as would estop it from development of said 21 acres by the construction of luxury type apartments meeting 'E-2' requirements, if this is properly an issue before the Court under the pleadings herein."

In response to plaintiffs' assertion of estoppel defendants first contend that it presents a new issue in this court, not having been raised by the pleadings and is not properly before us. We cannot agree with defendants' position in this regard since our examination of plaintiffs' petition reveals that the elements of estoppel were set forth; and further the pretrial order indicates recognition that the issue was raised. In view of the trial court's findings—quoted

above—which we believe are supported by the record, plaintiffs' contention of estoppel cannot be maintained. Plaintiffs rely primarily on the testimony of plaintiffs, Klamm, Fields, and Dent as a basis for establishing representations on the part of Westborough officers which would work estoppel against it. Mr. Klamm, on direct examination, testified concerning several conversations with Mr. Scherer and Mr. Schoenfelder in which he inquired about the development in back of his house and was assured there was not going to be any businesses or apartments. Klamm further testified that he was assured the land to the rear of his residence was zoned for single family dwelling and would be kept in such classification. On cross-examination it was brought out that the conversations were not in reference to the twenty-one acre subject tract, but the lots south of, or to the rear of, Klamm's residence in Normandy West. These lots remain single family residential zoning and are not affected in this case. Likewise, an examination of the testimony of Mr. Fields reveals that in the conversations described by him there was no specific reference made to the twenty-one acre tract in question here. Mr. Dent testified that he saw a plat which encompassed the entire area; and that the only developed part was the area where his lot was purchased. He did not know the exact amount of the seventy-one acres owned by Westborough that had been platted.

Mr. Scherer testified that the subject twenty-one acres had never been a part of the Normandy West Subdivision; and that he never recalled telling anyone what was the intended use of the twenty-one acres involved here. He testified that there was room for expansion of Normandy West; that they had fifty acres to work with; and that this fifty acres had nothing to do with the twenty-one acres here involved.

With respect to the "Articles of Incorporation of the Normandy West Homes Association and the Homes Association Declaration," both concern Normandy West Subdivision and have nothing to do with the subject property. Mr. Scherer testified that Lot 1, Block 1, Normandy West was originally included for rezoning by mistake and was later deleted. Since the Articles of Incorporation and Declaration apply only to Normandy West, rezoning of the twenty-one acre subject tract cannot be in contravention of either of the two instruments as found by the trial court in finding No. 19.

In their argument in support of estoppel plaintiffs further main-

tain that the doctrine of "reciprocal negative easement" is applicable. To our knowledge application of this doctrine has not heretofore been considered by this court. Our research reveals that the doctrine comes into play where the owner of two or more lots, situated near one another conveys one of the lots with express building restrictions of benefit to the land retained by the grantor, and that in such case the servitude becomes mutual, and during the period of restraint, the grantor and owner of the lot retained may do nothing that is forbidden to the owner of the lot sold. Such an implied restriction upon the use of the lot retained by the grantor is said to be a reciprocal negative easement which is enforceable against the grantor or a subsequent purchaser of the retained lot. (20 Am. Jur. 2d, Covenants, Conditions, and Restrictions, § 173; *Lanski v. Montealegre*, 361 Mich. 44, 104 N. W. 2d 772; *McQuade v. Wilcox*, 215 Mich. 302, 183 N. W. 771; and *Price et al., Aplnts., v. Anderson et al.*, 358 Pa. 209, 56 A. 2d 215.)

Our examination of the authorities on the subject reveals that it is not applicable in a case such as that at bar where the land in question is not a part of a subdivision in which the first lot or lots were sold; and particularly where the first lot or lots were part of a platted subdivision and separate from unplatted restricted lands upon which the implied restriction is sought to be imposed. (*McCandless v. Burns, Appellant*, 377 Pa. 18, 104 A. 2d 123; and *McCurdy v. Standard Realty Corporation*, 295 Ky. 587, 175 S. W. 2d 28.)

A careful examination of the record before us reveals no reason to disturb the findings and conclusion of the trial court upon any of the grounds urged.

The judgment is affirmed.