DECISION
Before this Court is an appeal from a decision of the North Kingstown Town Council (the "Council"), amending the Zoning Ordinances of the Town of North Kingstown § 21-363 from a general business to a rural residential zone. Paul and Marguerite Lischio (the "Lischios" or "appellants") seek reversal of that amendment, or alternatively, a declaration by this Court that their rights to develop property located in the amended zone have vested under the un-amended zone classification. Jurisdiction is pursuant to G.L. 1956 § 45-24-71. Per order of Presiding Justice Rodgers, this case was transferred from Washington County to Providence for assignment and disposition.
 FACTS/TRAVEL
The appellants are the owners of approximately sixteen (16) acres of undeveloped property situated in a GB — general business zone, subsequently amended to a RR/R-80 — rural residential zone, within the North Kingstown Groundwater Overlay District, and known as Assessor's Plat 101, Lot No. 20 in the Land Evidence Records of the Town of North Kingstown (the "Property"). Immediately to the west of the Property is a high density residential subdivision known as Mountain Laurel Estates ("MLE"), which includes eighty-one (81) ½ acre lots. As the Property previously was essentially a landlocked parcel, MLE conveyed a small parcel, contiguous to the Property, zoned village residential, and also located within the Groundwater Overlay District, and known as Assessor's Plat 102, Lot No. 129 in the Land Evidence Records of the Town of North Kingstown (the "Lot 129") to the appellants by warranty deed on January 10, 1992.
In 1992, the Council approved the North Kingstown Comprehensive Plan (the "Comprehensive Plan"), which was ratified by the State of Rhode Island in 1995. The Comprehensive Plan designated the development plan for the Property and Lot 129 as suited for "low density residential" development. In 1998, the Council amended the Town's zoning ordinance to limit the density of residential development in the Overlay District to one dwelling unit per two acres. Accordingly, the Comprehensive Plan's "low density" classification was effectuated for the Overlay District. In 1997, the North Kingstown Planning Commission and the Planning Department were organizing a comprehensive amendment to the Zoning Ordinances of the Town of North Kingstown to conform the ordinances with the Comprehensive Plan pursuant to the mandate of G.L. 1956 § 45-22.2-5(a)(3). Thus, the proposed 1997 amendments to the Zoning Ordinances of the Town of North Kingstown would have re-zoned the Property from GB — general business zone to RR/R-80 — rural residential zone; however, neither the Town of North Kingstown (the "Town") nor the appellants could agree on a suitable development project for the Property consistent with the proposed zone change. Therefore, the 1998 zoning amendment did not re-classify the zone in which the Property or Lot 129 were situated.
Subsequently, the appellants filed a petition with the Town of North Kingstown Zoning Board of Review (the "Board") for a use variance for Lot 129 and a dimensional variance for the Property permitting the erection of a self-storage business on the Property. On January 30, 1998, however, the Town returned the application for relief to the appellants because "no development plan [with respect to the Property had] received preliminary approval by the Planning Commission . . . ." PlanningDepartment Letter of January 30, 1998 at 1. Subsequently, by writ of mandamus, the Town accepted the appellants' application.
On April 11, 2000, the Board denied the appellants' requested relief, and on April 25, 2000, the appellants appealed the Board's denial to the Washington County Superior Court. On September 20, 2001, the Superior Court upheld the Board's denial of the dimensional variance but reversed the Board's denial of the use variance. With respect to the dimensional variance, the Superior Court found that the Board's denial of the appellants' application was proper because G.L. 1956 § 45-24-41(c)(3) granted zoning boards the discretion to determine on a case by case basis whether the granting of a variance, for an otherwise permitted use, would, nonetheless, not be appropriate given the character of the surrounding area, which in that case was primarily residential. With respect to the use variance, however, the Superior Court found that the Board's denial of the appellants' requested relief was not proper. Since all concerned parties agreed that Lot 129 had only one specific purpose — namely, for ingress and egress to the Property — there was no evidence of record to support the contention that changing Lot 129's use from village residential to general business would alter the general character of the surrounding area.
Between the time the appellants filed their appeal of the Board's decision with the Superior Court and the issuance of the Superior Court's decision, the Council, pursuant to a petition submitted by the Mountain Laurel Estates Homeowners Association (the "MLEHA"), a then unincorporated association, revisited the issue of amending the Zoning Ordinances of the Town of North Kingstown with respect to enforcing full compliance with the Comprehensive Plan. On July 10, 2000, the Council held a public meeting with respect to the MLEHA's petition for a zone change for the Property and approved the change from general business district to rural residential. Subsequently, the appellants filed a petition for writ of certiorari with the Rhode Island Supreme Court, appealing the September 10, 2001 decision of the Washington County Superior Court. On February 7, 2002, the Supreme Court granted certiorari to hear the appellants' appeal.
On August 8, 2000, the appellants timely appealed the Council's July 10, 2000 amendment of the Zoning Ordinances of the Town of North Kingstown. Jurisdiction is pursuant to G.L. 1956 § 45-24-71.
 STANDARD OF REVIEW.
This Court possesses appellate review jurisdiction of an amendment to a zoning ordinance pursuant to G.L. 1956 § 45-24-71 which reads:
 "(a) An appeal of an enactment of or an amendment to a zoning ordinance may be taken to the superior court for the county in which the municipality is situated by filing a complaint, as stated in this section, within thirty (30) days after the enactment or amendment has become effective. The appeal may be taken by an aggrieved party or by any legal resident or landowner of the municipality or by any association of residents or landowners of the municipality. The appeal shall not stay the enforcement of the zoning ordinance, as enacted or amended, but the court may, in its discretion, grant a stay on appropriate terms, which may include the filing of a bond, and make any other orders that it deems necessary for an equitable disposition of the appeal.
 (b) The complaint shall state with specificity the area or areas which the enactment or amendment does not conform with the comprehensive plan and/or the manner in which it constitutes a taking of private property without just compensation.
 (c) The review shall be conducted by the court without a jury. The court shall first consider whether the enactment or amendment of the zoning ordinance is in conformance with the comprehensive plan. If the enactment or amendment is not in conformance with the comprehensive plan, then the court shall invalidate the enactment or the amendment, or those parts of the enactment or amendment which are not in conformance with the comprehensive plan. The court shall not revise the ordinance to conform with the comprehensive plan, but may suggest appropriate language as part of the court decision.
 (d) In the case of an aggrieved party, where the court has found that the enactment or amendment of the zoning ordinance is in conformance with the comprehensive plan, then the court shall next determine whether the enactment or amendment works as a taking of property from the aggrieved party. If the court determines that there has been a taking, the court shall remand the case to the legislative body of the municipality, with its findings that a taking has occurred, and order the municipality to either provide just compensation or rescind the enactment or amendment within thirty (30) days.
 (e) The superior court retains jurisdiction, in the event that the aggrieved party and the municipality do not agree on the amount of compensation, in which case the superior court shall hold further hearings to determine and to award compensation. The superior court retains jurisdiction to determine the amount of an award of compensation for any temporary taking, if that taking exists.
 (f) The court may, in its discretion, upon the motion of the parties or on its own motion, award reasonable attorney's fees to any party to an appeal, including a municipality." G.L. 1956 § 45-24-71.
Pursuant to G.L. 1956 § 45-24-71, aggrieved parties may appeal an amendment of the zoning ordinance to the Superior Court. This Court is authorized to invalidate any portion of an amendment which it finds to be inconsistent "with the comprehensive plan." G.L. 1956 § 45-24-71.
 STANDING
The appellants argue that MLEHA, as an unincorporated association at the time of the July 10, 2000 Council meeting, lacked standing to petition the Council for a zone change with respect to the Property. The Council does not address the issue of standing. However, MLEHA, as an intervening party, contends that it did have standing irrespective of whether it was an incorporated or unincorporated association at the time it petitioned the Council for a zone change.
Pursuant to G.L. 1956 §§ 7-1.1-87 and 7-6-56, the Rhode Island Secretary of State may revoke a corporation's certificate of incorporation if the subject corporation "has failed to file its annual report within the time required by this chapter, or has failed to pay any fees, when they have become due and payable . . . ." G.L. 1956 § 7-1.1-87; G.L. 1956 § 7-6-56. Accordingly, "[u]pon the issuance of the certificate of revocation, the authority of the corporation totransact business in this state ceases. G.L. 1956 § 7-1.1-88; G.L. 1956 § 7-6-57. (Emphasis added.) As Rhode Island does not recognize the defense of de facto incorporation, the failure of an association to fully comply with the incorporation requirements as mandated in the Rhode Island General Laws results in the default legal status of an unincorporated association upon issuance of the certificate of revocation. DBA/Delaware Systems Corp. v. Greenfield, 636 A.2d 1318, 1319 (R.I. 1994) (holding that G.L. 1956 § 7-1.1-136 was "designed to negate the possibility of asserting the defense of a de facto corporation").
With respect to unincorporated associations, it is well-recognized that "at common law, an unincorporated association is not an entity, and has no status distinct from the persons composing it, but rather is a body of individuals acting together for the prosecution of a common enterprise without a corporate charter but upon methods and forms used by corporations." 6 Am. Jur.2d, Associations and Clubs § 1 at 393 (1992). The members of such associations become agents, each to the other, and are bound to each other on a joint enterprise theory of liability. Walsh v. Israel Couture Post, No. 2274 V.F.W., 542 A.2d 1094, 1096 (R.I. 1988). Thus, "in the absence of an enabling or permissive statute or rule of practice, an unincorporated association . . . cannot sue or be sued in the organization's own name." 6 Am. Jur.2d,Associations and Clubs § 51 at 438; see City of Greenbelt v. Jaeger,206 A.2d 694, 698 (M.D. 1965) (holding that "an association or corporate body representing only the viewpoint of its members is not itself aggrieved merely because its members are"); Citizens for Los Alamos,Inc. v. Incorporated County of Los Alamos, 725 P.2d 250 (N.M. 1986) (unincorporated association was not a "person aggrieved" for purposes of standing to challenge zoning board decision"); see also NorthamptonResidents Assn. v. Northampton Township Bd. of Supervisors, 322 A.2d 787
(Pa. Commw. 1974); but see Piney Mountain Neighborhood Assn, Inc. v. Townof Chapel Hill, 304 S.E.2d 251, 253 (N.C. App. 1983) (granting standing to an incorporated homeowners' association challenging a town council's approval of a special use permit. Although the association "[had] no property interest . . . [standing was, nevertheless, warranted because the association] represent[ed] individuals who live[d] in the affected area and who potentially [would] suffer injury by the issuance of the special use permit.") States having such permissive legislation have patterned it on the Uniform Unincorporated Nonprofit Association Act, authorizing "nonprofit associations to institute, defend, intervene, or participate in judicial and other proceedings." 6 Am. Jur 2d, Associations and Clubs
§ 52 at 439.
Rhode Island, however, has not adopted this act. Where there is no statutory authorization of suits by or against an unincorporated association in the association name, the remedy, when a cause of action for or against the association exists, is by an action in the names of the several persons constituting the association . . . ." Id. § 57 at 444. Thus, it has often been said that associations which assert standing on behalf of their members must demonstrate to courts that those "members have requested that [the association] bring suit or otherwise asserted some control over the decision." Charles Allen Wright, et al., FederalPractice and Procedure § 3531.9 at 624 (1984) (citing, inter alia,Natural Resources Defense Council, Inc., v. U.S. EPA, 507 F.2d 905, 908-911 (C.A. 9th 1974) (denying standing in the absence of any showing that the members had requested or consented to representation by the associations)).
At issue in the present case is whether MLEHA was an unincorporated association at the time of its petition to the Council for a zone change, and if so, whether MLEHA's status as an unincorporated association stripped it of the necessary standing to file the petition.
With respect to petitions for amendments to zoning ordinances, it is generally recognized that
 "despite the fact that petitions for rezonings are usually filed . . . by interested or affected property owners . . . there is, in general, no bar against any citizen or group — at least so long as they are municipal residents or property owners — seeking a particular zone change. This is because citizens have an undoubted right to petition their legislators by any means available — whether by public petition, correspondence, public appearances, and communications of all kinds . . . ." 2 Arden H. Rathkopf and Daren A Rathkopf, Rathkopf's: The Law of Zoning and Planning § 27.04 at 27-15 to 27-16 (1999).
In this regard, our legislature has broadly indicated that "[t]he city or town shall designate the officer or agency to receive a proposal for . . . amendment . . . of a zoning ordinance or zoning map(s). G.L. 1956 § 45-24-51. Similarly, the Zoning Ordinances of the Town of North Kingstown § 21-19 simply state that "[a]n application to . . . amend . . . a zoning ordinance(s) . . . shall be submitted to the town clerk."Zoning Ordinances of the Town of North Kinstown, § 21-19. Alternatively, our legislature has spoken quite specifically with respect to appeals of zoning amendments to this Court. General Laws, 1956 section45-24-71, for example, speaks of aggrieved parties' appeals of zoning amendments to the Superior Court. G.L. 1956 § 45-24-71. Here, the General Assembly has deliberately conferred standing to "an aggrieved party or . . . any legal resident or landowner of the municipality or . . . any association of residents or landowners of the municipality" to appeal zoning amendments. Id. Thus, while the Rhode Island Supreme Court has recently held that, in enacting G.L. 1956 § 45-24-71, the General Assembly sought to restrict standing in this respect to defined groups,Smithfield Voters for Responsible Development v. LaGreca, 755 A.2d 126
(R.I. 2000), the inverse would seem true in that by not specifying any defined groups in G.L. 1956 § 45-24-51, our legislature has liberally conferred standing to petition municipalities for zoning amendments on almost any interested party. See Rathkopf, Rathkopf's: The Law of Zoningand Planning § 27.04 at 27-15 to 27-16. It has also been said with regard to petitions for zoning amendments that "[g]enerally, a petition or application is capable of initiating the amendment process regardless of its form, and irrespective of whether the petitioner is the owner of the land affected by the proposed zoning amendment." Kenneth H. Young,Anderson's: American Law of Zoning, § 4.33 at 343 (4th ed. 1996) (citing, inter alia, Dent v. Kansas City, 214 Kan. 257, 519 P.2d 704
(1974) (where a zoning amendment was not invalidated merely because the petitioner did not pay the filing fee); Homefield Ass'n of Yonkers, Inc.v. Frank, 273 A.D. 788, 75 N.Y.S.2d 384 (1947), aff'd, 298 N.Y. 524, 80 N.E.2d 664 (1948) (where the exercise of a town council's legislative function was not "conditioned on the presentation of any particular form of petition").
In the case at bar, it is undisputed that MLEHA was not properly incorporated pursuant to the provisions of either G.L. 1956 § 7-1.1-1et seq. or G.L. 1956 § 7-6-1 et seq. Tr. at 14. Thus, pursuant to G.L. 1956 § 7-1.1-87; G.L. 1956 § 7-1.1-88; G.L. 1956 § 7-6-56; and G.L. 1956 § 7-6-57, MLEHA's corporate status and ability to transact business within the State of Rhode Island was non-existent at the time the petition for the zone change was filed, and as of the time of the July 10, 2000 Council meeting. Nevertheless, the appellants' contention that G.L. 1956 § 7-1.1-88's and G.L. 1956 § 7-6-57's proscriptions on an unincorporated association transacting business within the state precluded MLEHA from petitioning the Town for a zone change is without merit. It is generally said that the term, "transacting business," denotes the "doing or performing of a series of acts occupying the time, attention, and labor of men for the purpose of livelihood, profit or pleasure." Barnett v. Etna Explosives Co., 220 P. 874, 96 Okl 132 (1923). In contexts similar to that of petitions for zone changes, it has been said that "the prosecuting of a suit is not transacting business . . . requiring a corporation to file its articles of incorporation with the Secretary of State, before transacting business . . . ." NebraskaPower Co. v. Koenig, 139 N.W. 839, 843, 93 Neb. 68, 78 (1913). There is no indication that our legislature intended the proscription against unincorporated associations transacting business within the state to mean that such associations should be precluded from petitioning municipalities for amendments to zoning ordinances. Thus, the mere fact that MLEHA was not duly incorporated, either at the time the petition was filed or as of the July 10, 2000 Council meeting, did not, in and of itself, prohibit MLEHA from petitioning for an amendment to the zoning ordinance.
Seemingly troublesome, however, with respect to MLEHA's standing to petition the Council is the form of the petition. Specifically, the petition was not brought in the form of or similar to "an action in the names of the several persons constituting the association," 6 Am. Jur 2d, Associations and Clubs § 57 at 444; instead, it was brought on behalf of the unincorporated MLEHA and signed by "Michael Heaney ["Heaney"] in his capacity as President of Mountain Laurel Homeowners' Association." Application for Amendment to Zoning Ordinance of April 18,2000 at 3. While the form of the petition for a zoning amendment is certainly of consequence, the instant defect was not so fatal so as to deprive MLEHA of standing. See Young, Anderson's: American Law ofZoning, § 4.33 at 343. The permissive nature of our Enabling Act and the North Kingstown ordinances, pursuant to which parties may bring petitions for zone changes, see discussion supra p. 8-9, as well as the fact that a sizeable number of MLEHA members attended the July 10, 2000 hearing expressly supporting Heaney's petition, Tr. of July 10, 2000 at 20, further supports a finding of standing.
Even assuming arguendo that MLEHA lacked standing to petition the Council, it is, nevertheless, a fundamental principle of Rhode Island jurisprudence that where a petitioner lacks the necessary injury-in-fact for standing, courts have, in appropriate circumstances, "[overlooked] the standing requirement to determine the merits of a case of substantial public interest." Burns v. Sundlun, 617 A.2d 114, 116 (R.I. 1992) (where standing was conferred upon a taxpayer seeking a declaratory judgment that the propriety of simulcasting certain out-of-state horse races should be placed on a public referendum); see also Sennott v. Hawksley,103 R.I. 730, 241 A.2d 286 (1968). Presently, where the amendment to § 21-363 could very well affect the general character of MLE, as well as the fair market values of area residents' homes, the instant case would present circumstances of such important public interest so as to justify overlooking the standing requirement were it necessary.
Accordingly, the evidence of record before this Court demonstrates that despite the fact that MLEHA was not duly incorporated and the petition for an amendment of § 21-363 was signed by Heaney as a representative of an unincorporated association, such an extant group would fall within the loose framework of G.L. 1956 § 45-24-51 and the Zoning Ordinances of the Town of North Kingstown § 21-19 regarding parties that might properly petition the Council for zoning amendments. Furthermore, the important public significance of the instant matter further supports a finding of standing.
 THE AMENDMENT OF THE ZONING ORDINANCES OF THE TOWN OF NORTH KINGSTOWN.
The appellants next argue that the Council did not have before it the requisite evidence to sustain a procedurally proper amendment to the zoning ordinance. Both the Council and MLEHA, however, contend that the Council's legislative enactments enjoy a presumption of validity from this Court and that in any event, the amendment was proper because it was wholly consistent with the Comprehensive Plan.
General Laws 1956, section 45-24-50 provides in pertinent part that
 (a) For the purposes of promoting the public health, safety, morals, and general welfare, a city or town council has the power, in accordance with the provisions of this chapter, to adopt, amend, or repeal, and to provide for the administration, interpretation, and enforcement of, a zoning ordinance. . . .
 (b) A zoning ordinance, and all amendments to it, must be consistent with the city or town's comprehensive plan, as described in chapter 22.2 of this title, and provide for the implementation of the city or town comprehensive plan.
 ***
 (d) The city or town must bring the zoning ordinance or amendment into conformance with its comprehensive plan as approved by the director of administration, the state comprehensive plan appeal board, or the supreme court not more than eighteen (18) months after approval is given." G.L. 1956 § 45-24-50.
General Laws 1956, section 45-24-51 provides in relevant part that
 "The city or town shall designate the officer or agency to receive a proposal for . . . amendment . . . of a zoning ordinance or zoning map(s). Immediately upon receipt of the proposal, the officer or agency shall refer the proposal to the city or town council, and to the planning board or commission of the city or town for study and recommendation. The planning board or commission shall, in turn, notify and seek the advice of the city or town planning department, if any, and report to the city or town council within forty-five (45) days after receipt of the proposal, giving its findings and recommendations as prescribed in § 45-24-52 . . . . The city or town council shall hold a public hearing within sixty-five (65) days of receipt of a proposal, giving proper notice as prescribed in § 45-24-53. The city or town council shall render a decision on any proposal within forty-five (45) days after the date of completion of the public hearing. The provisions of this section pertaining to deadlines shall not be construed to apply to any extension consented to by an applicant." G.L. 1956 § 45-24-41.
Finally, General Laws 1956, section 45-24-52 provides that
 "Among its findings and recommendations to the city or town council with respect to a proposal for adoption, amendment, or repeal of a zoning ordinance or zoning map, the planning board or commission shall:
 (1) Include a statement on the general consistency of the proposal with the comprehensive plan of the city or town, including the goals and policies statement, the implementation program, and all other applicable elements of the comprehensive plan; and
 (2) Include a demonstration of recognition and consideration of each of the applicable purposes of zoning, as presented in § 45-24-30." G.L. 1956 § 45-24-52.
The Zoning Ordinances of the Town of North Kingstown, section 21-19 reads in pertinent part:
 (a) Receipt of application. An application to . . . amend . . . a zoning ordinance(s) . . . shall be submitted to the town clerk. Immediately upon receipt of the proposal, the town clerk shall refer the proposal to the town council and to the planning commission for study and recommendation. The planning commission shall, in turn, notify and seek the advice of the department of planning and development and shall report to the town council within forty-five (45) days after the receipt of the proposal giving its findings and recommendations as prescribed in section 21-19(b) . . . . The town council shall hold a public hearing within sixty-five (65) days of receipt of a proposal, giving proper notice as prescribed in section 21-19(c). The town council shall render a decision on any proposal within forty-five (45) days after the date of completion of the public hearing . . . ."
 (b) Review by the planning commission. Among its findings and recommendations to the town council with respect to a proposal for . . . amendment . . . of a zoning ordinance or zoning map, the planning commission shall:
 (1) Include a statement on the general consistency of the proposal with the comprehensive plan, including the goals and policies statement, the implementation program, and all other applicable elements of the comprehensive plan; and
 (2) Include a demonstration of recognition and consideration of each of the applicable general purposes of zoning, as presented in section 21-4 . . . ." Zoning Ordinances of the Town of North Kingstown, § 21-19.
Of central importance to a municipality's amendment of its zoning ordinances is ensuring that such change(s) strictly conform to the municipality's comprehensive plan as required by the Rhode Island Comprehensive Planning and Land Use Regulation Act of G.L. 1956 §45-22.2-1 et seq.; the rationale behind which is to avoid "haphazard or improper zoning." G.L. 1956 § 45-22.2-1 et seq.; Cianciarulo v.Tarro, 92 R.I. 352, 168 A.2d 719 (1961). Equally important is the requirement that the town council hold a public hearing before amending an ordinance which amounts to more than "an empty ritual." Roland F.Chase, Rhode Island Zoning Handbook § 27 at 29 (1997). It has been said that
 "the crucial question to be answered in determining whether a public hearing was conducted in a fair manner is whether a fair-minded person in attendance . . . could . . . in good conscience say that everyone had been heard who, in all fairness, should have been heard and that the legislative body . . . required by law to hold the hearings gave reasonable faith and credit to all matters presented, according to the weight and force they were entitled to receive. Id. § 27 at 29-30.
If all the required formalities have been followed, then, amendments of zoning ordinances are entitled to the presumption of validity; this includes the "presumption that zoning enactments are in accord with the municipality's comprehensive plan . . . . The presumption of legality or validity can be overcome only by competent evidence, and courts must, if possible, interpret a zoning ordinance as valid when it is challenged."Id. § 28 at 30-31; see Elliott v. Town of Warren, No. 01-479., slip op. (R.I. filed March 7, 2003) (holding that a "presumption of regularity . . . attaches to acts by municipal officials . . . and that sworn officers of the law are entitled to the presumption that their official acts have been properly performed, until the contrary is proved").
In the present case, the Town of North Kingstown Comprehensive Plan Land Use Plan Map designates the area wherein the Property is located as "low density residential," contemplating 80,000 to 120,000 square foot lots. Town of North Kingstown Comprehensive Plan Land Use Plan Map. The Zoning Ordinances of the Town of North Kingstown § 21-89 — general business district, describe the general business zone in pertinent part as
 "created to provide areas for intensive commercial activities that primarily depend on a great volume of vehicular traffic and serve the daily shopping needs of the community." Zoning Ordinances of the Town of North Kingstown, § 21-89.
Alternatively, the Zoning Ordinances of the Town of North Kingstown § 21-36 — Rural/RR80, describe the rural residential zone as "intended for low density residential development in sensitive environmental areas of the town, such as groundwater overlay districts, and areas which rely on individual septic disposal systems for sewerage disposal." Zoning Ordinances of the Town of North Kingstown, § 21-36. The minimum lot size requirement for the rural residential district is 80,000 square feet, while the minimum lot size requirement for the general business district is 20,000 square feet. ZoningOrdinances of the Town of North Kingstown, Tbl. 2A, 2B. Accordingly, since the Comprehensive Plan calls for a low density residential scheme for the subject area, and since the Rural/RR-80 zoning classification's low density, and environmentally sensitive nature effectuates the goals of the Comprehensive Plan better than the commercially "intensive" nature of the general business zone, this Court finds that the Council's July 10, 2000 amendment to the Zoning Ordinances of the Town of North Kingstown was consistent with the Comprehensive Plan.
With respect to the procedural propriety of amending § 21-363 of the Zoning Ordinances of the Town of North Kingstown, the only evidence before this Court that the Council followed the proper procedures for amendment, consistent with the following — G.L. 1956 45-24-51; G.L. 1956 § 45-24-52; and the Zoning Ordinances of the Town of North Kingstown § 21-19 — was the record of the July 10, 2000 hearing which afforded all interested parties a meaningful opportunity to respond to the proposed amendment. See generally Tr. of July 10, 2000; see L.A.Ray Realty v. Town Council of Cumberland, 603 A.2d 311, 314 (R.I. 1992) (holding that "[t]he hearing gives interested parties a chance to make their views known to the governing body and to testify or argue either for or against the proposed regulation or amendment" and, as such, parties should expect "a reasonable hope of being heeded.") There was not, however, any evidence certified to this Court, other than the statements of the appellants' counsel at the July 10, 2000 hearing, Id.
at 27-28, that the Town Planning Commission (the "Planning Commission") made findings or recommendations with respect to the proposed amendment's consistency with the comprehensive plan. Nor was there any evidence that the Planning Commission submitted any findings or recommendations it may have made to the Council.
Amendments to zoning ordinances are entitled to the presumption of legality, and "can be overcome only by competent evidence," Verdecchiav. Johnston Town Council, 589 A.2d 830 (R.I. 1991) (holding that in challenging a town council's amendment to a zoning ordinance, the "plaintiffs needed to present evidence that the reclassification of the defendants' lot was contrary to the comprehensive plan in the area." Because the plaintiffs did not present such evidence, the Court upheld the "trial justice's conclusion that the zoning ordinance amendment was in compliance with [the comprehensive plan]). Furthermore, while some defects in the zoning amendment process will invalidate such amendments, other defects are not fatal. See generally discussion supra at 9-10; seeGendernalik v. Redford, 35 Mich. App. 273, 275, 192 N.W.2d 265, 266 (1971) (where "the [trial] judge found a deliberate misrepresentation of a material fact attributable to the township which vitiated the hearing and decision of the county planning commission, and that this constituted a fatal defect in the process"); but see Treisman v. Bedford, 563 A.2d 786
(N.H. 1989) (validity of a zoning amendment upheld where there was no competent evidence to suggest that the voters who approved the amendment were materially misled regarding the facts and potential impact surrounding the proposed amendment); Dent, 214 Kan. 257, 519 P.2d 704
(zoning amendment not invalidated because petitioner did not pay the filing fee); Homefield Ass'n of Yonkers, Inc., 273 A.D. 788, 75 N.Y.S.2d 384 (town council's legislative function not "conditioned on the presentation of any particular form of petition"). The fact that the record does not indicate what recommendations the planning commission made to the Council with regard to the proposed amendment was, nevertheless, not fatal to the process as the Council was aware of the proposed amendment's consistency with the comprehensive plan. Seegenerally Tr. of July 10, 2000. Accordingly, since the appellants have not certified to this Court any competent evidence that the amendment to § 21-363 was illegal, this Court must presume that the Council legally amended that section.
 TAKINGS ANALYSIS
Pursuant to G.L. 1956 § 45-24-71(d), this Court must determine whether the Council's amendment to § 21-363 constituted a taking of the Property. Accordingly, both the United States and Rhode Island Constitutions essentially provide that private property may not be taken for public use without just compensation having been paid to the property's owner. Annicelli v. South Kingstown, 463 A.2d 133 (R.I. 1983). Thus, it is well-recognized that "a zoning ordinance that deprives an owner of all beneficial use of his property is confiscatory and requires compensation." Id. at 139. Even where there has been no physical entry by the government upon a landowner's property, a regulatory taking of such property may occur where "all beneficial use of property is deprived by governmental restrictions." Id. Thus the determination of a taking of property without just compensation in such cases often "depends upon whether the restriction practically or substantially renders the land useless for all reasonable purposes." Id.
In the instant matter, the record before this Court indicates that the amendment to § 21-363 did not constitute a taking of the Property without just compensation because the appellants would still be able to develop, at the very least, residential properties on the affected land.[1] Therefore, since the appellants were not deprived of all the beneficial use of the Property, this Court finds that a taking of private property by the government without just compensation has not occurred.
 VESTED RIGHTS
Finally, the appellants contend that their rights to develop the Property consistent with the requirements of a general business zoning classification vested because they had submitted a substantially complete application to the Board for a dimensional and use variance for the Property and Lot No. 129, respectively. Additionally, the appellants maintain that the Town Solicitor (the "Solicitor") erroneously advised the Council that amending § 21-363 would have no effect on the appellants' appeal of the Washington County Superior Court's decision of September 20, 2001. Nevertheless, since the Rhode Island Supreme Court in the recent case of Lischio v. Town of North Kingstown, No. 01-505 MP., slip op. (R.I. filed March 21, 2003) held that the Board, in the instant situation, improperly denied the appellants' request for the dimensional and use variances for the Property and Lot 129, respectively, this Court need not consider the appellants' arguments with respect to whether their rights to develop the Property pursuant to the requirements of a general business zone vested as the issue is now moot.
 CONCLUSION
This Court finds that the Council's July 10, 2000 amendment of the Zoning Ordinances of the Town of North Kingstown § 21-363 did not contravene the provisions of G.L. 1956 § 45-24-50; G.L. 1956 §45-24-51; G.L. 1956 § 45-24-52; or the Zoning Ordinances of the Town of North Kingstown § 21-19. With respect to the propriety of the petition for the amendment to § 21-363, while the form of the petition was technically flawed, nevertheless, this error did not prejudice the rights of any parties and did not preclude the Council from considering the amendment. With regard to the amendment of § 21-363, the evidence before this Court illustrates that the Council conducted a full, fair hearing. The evidence also demonstrates that the amendment was fully consistent with the Comprehensive Plan. Accordingly, this Court affirms the Council's July 10, 2000 amendment to the Zoning Ordinances of the Town of North Kingstown § 21-363.
This Court also determines that the subject amendment did not constitute a taking.
Counsel shall submit the appropriate order for entry.
[1] In fact, the appellants will most likely be able to develop the Property as a commercial use since the Rhode Island Supreme Court's recent holding in Lischio v. Town of North Kingstown, No. 01-505 MP., slip op. (R.I. filed March 21, 2003) reversed the Board's denial of the appellants' dimensional variance application. See discussion infra at 18.